161 N.J. Super. 284 (1978)
391 A.2d 590
WILLIAM & BARBARA CALDWELL: EDNA MILLER: VINCENT & MARY K. FARRARO: MANNY & KATHERINE CID: EDWARD & DOMENICA SANTORA: MARGARET STEPHENSON: JOHN & CLAUDIA LEONE: ROBERT & JUNE JAROCHE: SERGE & JULIA CASIMER: ROBERT & CAROL COGAN: VINCENT & ELLEN BASILE: ELEANOR VON EIGEN: BEATRICE CONROY: WILLARD & LUCILLE BORDEN: WALTER & KATHLEEN HARTMAN: FRANK & ANNA MC GRATH: JOSEPH & JEAN GAWLICK: FRANK R. & MADELINE MC GRATH: GEORGE CHRISTOPHER: THOMAS LOWE: DAVID BRONBERG: NATHAN & THERESA LEWIS: RICHARD & MARY JANE BERGGREN: T.A. DAUM: OLGA NALEWICK: DOROTHY STILLWELL: WILLIAM & ELEANOR KNAPP: DANIEL & VIOLA MARINO: PLAINTIFFS,
v.
GEORGE LAMBROU, DOROTHY R. KATZ, DOROTHY FREEMAN, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF MAPLEWOOD, PAUL WILKS, BUILDING INSPECTOR OF THE TOWNSHIP OF MAPLEWOOD, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 23, 1978.
*286 Mr. James B. Flynn for plaintiff (Messrs. Williams & Flynn, attorneys).
Mr. Roy E. Kurnos for defendant Lambrou (Messrs. Harding & Kurnos, attorneys).
Mr. Joel S. Ziegler for defendant Maplewood Board of Adjustment (Messrs. Goldhor, Meskin & Ziegler, attorneys).
MARZULLI, J.S.C.
This action in lieu of prerogative writs is an appeal from the decision of the Maplewood Board of Adjustment which granted use and bulk variances permitting erection of a full service restaurant. Plaintiffs, a group comprised of Maplewood residents living nearby to the proposed establishment, contend that the board's decision is void because the procedure there followed was in violation of the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. (the act).
The specific contention of plaintiffs is that a portion of the final meeting at which the variance was granted was conducted in a private session to which the public was either effectively or completely excluded. Plaintiffs allege that this procedure violates the act.
Defendant board of adjustment (board) and defendant-applicant Lambrou (applicant) have alleged that no private session ever took place; that all deliberations, though not transcribed, were conducted at the public session, and that any nonpublic caucus fell within the attorney-client exception to the act. They also assert that if a private session did occur, nothing transpired within such meeting to constitute a violation of the act.
A complaint in lieu of prerogative writs is a substitute formal writ it replaced. Evans v. Villani, 19 N.J. Super. 86 (App. Div. 1952). When a decision of municipal government is challenged, the substituted writ is that of certiorari, a predominantly appellate form of action. Specht v. Central Passenger Ry., 68 A. 785 *287 (Sup. Ct. 1908). As a result, the trial judge should generally limit its inquiry to an examination of the full and complete record below. It was to enable such examination that this court permitted the defendants to introduce a transcript of the tape recording made by the Secretary of the Board during the proceedings, particularly that portion of the proceedings which was not recorded by the stenographic reporter.
After careful examination of both of the aforementioned transcripts, this court is able to come to a number of conclusions. First, and most important, it is clear beyond question that at the meeting of September 13, 1977, the same meeting at which the contested variance was granted, the Board did in fact engage in some discussion out of the presence of the public. At that point in the proceedings, the court is forced to rely solely upon the tape-recorded transcript since the stenographic reporter was requested by the Board to cease taking dictation. The stenographic recording was resumed, at the Board's request, at a later point in the meeting. The Board's act of temporarily prohibiting the stenographic recording of its discussion is not in any way violative of the Act. Both the Open Public Meetings Act, N.J.S.A. 10:4-14, and the Municipal Land Use Act, N.J.S.A. 40:55D-9(c) require only the taking of minutes at regularly scheduled board of adjustment meetings and nothing in either act requires that verbatim transcripts be continued without interruption once commenced.
Returning to a consideration of the tape-recorded transcript at the point where the board announced its intention to go into private session, it appears that the decision was motivated by a desire of the board members to consult with legal counsel regarding the power of the board to make modifications in the applicant's proposed site plan. The transcript reveals that for a considerable length of time preceding the decision to retire the board members were locked in an occasionally acrimonious dispute regarding their authority to alter the site plan. The board chairman. *288 Mr. Benjamin, announced to the audience that the purpose for the private session was to discuss a legal matter with counsel. Upon recommencing the public portion of the meeting the chairman announced to those present that no discussion of the application's merits had been discussed in private.
There is no verbatim record of the conversation which took place at the private session and this court believes that no deliberate attempt to privately discuss the merits of the application was perpetrated by the board. In spite of this belief, it is my opinion that the act was violated when the board retired to a private caucus and, as required by the act (N.J.S.A. 10:4-15(a)), the decision to grant a variance is hereby declared to be null and void.
This decision is arrived at after careful analysis of the language of the act and the expressions of the legislative intent as embodied in the record of public hearings and the Senate and Assembly Statements accompanying the approved legislation.
The obvious intent of the legislature was to pass a bill which would contribute toward the restoration of public confidence in the processes of local government by demanding that all public business be conducted in a forum where the citizenry is free to attend and witness the proceedings. The statutorily codified expression of legislative purpose, N.J.S.A. 10:4-7 makes clear that all discussions should be held in open session, with certain very narrow exceptions. N.J.S.A. 10:4-12(b).
In this regard defendants claim that either the attorney-client privilege or the "anticipated litigation" exception validates the caucus conducted herein. N.J.S.A. 10:4-12(b) (7). It is the opinion of this court that neither of these exceptions is applicable to the discussions conducted in caucus by the board. The attorney-client privilege is clearly inapplicable since there was no intention on the part of those present that the discussion be regarded as confidential. The "anticipated litigation" exception refers *289 only to discussions concerning strategy or planning with regard to future litigation and is clearly inapplicable in the case at bar. The same issue has been addressed by the Attorney General of this State in a formal opinion to the Commissioner of the New Jersey Public Utilities Commission:
The fact that the Public Utilities Commission may become a party to a judicial appeal if its decision in a utility rate application is appealed to the Appellate Division still does not permit it to utilize the exemption to conduct these deliberations in closed sessions. To invoke this exception, the subject under discussion must be the "pending or anticipated litigation" itself, i.e., the public body must be discussing its strategy in the litigation, the position it will take, the strengths and weaknesses of that position with respect to the litigation, possible settlements of the litigation or some other facet of the litigation itself. [A.G. Op. 30-1976]
Furthermore, the act requires that any attempt to retire into private session under one of the statutory exceptions must be preceded by the passage of a formal resolution explaining the exception under which the board deems itself empowered to retire. Since no such resolution was passed at the meeting herein, no exception can apply. N.J.S.A. 10:4-13.
With regard to the argument of defense counsel that the merits of the proposed variance were never discussed in private session, this court is compelled to dismiss that argument as irrelevant. The primary goal of the Legislature in this act was not to prevent municipal or state agencies from deliberately violating the public trust by arriving at deals behind closed doors, although such a result would be welcomed; rather, the primary intent of the act was to restore public confidence by completely eradicating even the appearance of impropriety at publicly conducted meetings. The rationale behind the Legislature's desire to prohibit more than just intentional violations was expressed in a preenactment report of the Attorney General's staff: *290 Even though corruption may not exist, "secrecy" is viewed by the public as a synonym for "dishonesty". Whether dishonesty does, or does not, exist is irrelevant. The important factor is that "secrecy" creates a belief that it exists which, if extensive enough, could destroy needed public support for government action. [New Jersey's Right to Know a Resort on Open Government (1974)]
The Attorney General's report and the conclusions contained therein were cited by the act's sponsor, Assemblyman Byron Baer, as being "essentially similar" to those proposed by his legislation. "Public Hearing on A-1030" (March 4, 1974), at 105.
Mr. Baer also indicated that the act is designed to prohibit actions which even contribute to public suspicion, and that such an approach is necessary to protect the reputation and credibility of honest and dedicated public officials.
I know that there are many, many dedicated public officials at all levels of government. But sadly, public confidence is at such a low ebb that the closed meetings of many dedicated public officials of the highest integrity cause great distrust among a suspicious and disillusioned public. [Id. at 102]
This interpretation of the legislative intent is further supported by an analysis of the differences between the present act and the legislation it replaced. The prior act, L. 1960, c. 173, was less than one-third the length of the act now under consideration and was far less detailed and comprehensive in scope. N.J.S.A. 10:4-1 et seq. Under the prior act only "official action" was deemed important enough to warrant attention, and it was only such action that was prohibited from taking place in private session. N.J.S.A. 10:4-5. "Official action" was defined within the body of the statute as "a determination made by vote." N.J.S.A. 10:4-2.
It is clear, therefore, that the prior legislation required only that the voting process be conducted in public. This requirement is in stark contrast to the all-encompassing language contained in the present act. It is my opinion that *291 the present act clearly renunciates the approach of its predecessor legislation by permitting the public "to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies * * *." N.J.S.A. 10:4-7. This same provision of the act which, importantly, is entitled "Legislative findings and declaration," also declares that all citizens shall have "the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way * * *," id. (emphasis supplied), with the specific exceptions that were hereinbefore discussed.
The Legislature has clearly rejected the notion that only "official action" requires public scrutiny by guaranteeing the right of public attendance to all phases of the decision-making process and regardless of whether such action culminates in the taking of a vote. Since the legislators of this State cannot be physically present at every public meeting to determine the extent to which each "private caucus" will affect the public trust, they have deemed it necessary to require that all discussion, of whatever nature, and no matter how inconsequential, be conducted before the local populace unless one of the aforementioned exceptions is properly invoked.
The decision of this court to render null and void the action of the board is not a reflection upon the conduct of the entire procedure conducted in this matter. Since the violation of the act took place during the board's discussion of the reasons for and against the approval of the site plan, it is only that portion of the meeting that must be reconducted properly and in accordance with the act. The act is clear in requiring that only the portions found to be in violation of the act must be reconducted in proper fashion. N.J.S.A. 10:4-15. This rehabilitative procedure is in keeping with the act's purpose of discouraging public distrust of local governmental functioning. If any such distrust had in fact been engendered by the private caucus conducted herein, it *292 will be effectively dispelled by reconducting the caucus before the public, thereby verifying that no secret arguments or bargains, pro or con, have contributed to the final vote of the Board.
This court hereby reverses the decision of the Maplewood Board of Adjustment for the reasons herein mentioned and remands the matter back to the Board for further proceedings consistent with this decision. In the event that this matter should again be the subject of an appeal, this court retains jurisdiction over the action and directs that any future proceedings be directed to this court.