183 N.J. Super. 244 (1981)
443 A.2d 777
JAMES N. HUDANICH, PLAINTIFF,
v.
BOROUGH COUNCIL OF THE BOROUGH OF AVALON, A CORPORATE BODY POLITIC; ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF AVALON, A CORPORATE BODY POLITIC; HUNTS THEATRES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, AND JACK H. GREENBERG, DEFENDANTS.
Superior Court of New Jersey, Law Division, Cape May County.
Decided December 23, 1981.
*247 James A. Kennedy for plaintiff (Gagliano, Tucci & Kennedy, attorneys).
Robert A. Fineberg for defendant Borough Council of Avalon.
John H. Mead for defendant Zoning Board of Adjustment of Avalon.
*248 W.M. Balliette, Jr. for defendant Hunts Theatres, Inc. (Cafiero & Balliette, attorneys).
Vincent L. Lamanna, Jr. for defendant Jack H. Greenberg (Lamanna & Quinn, attorneys).
STEEDLE, Acting A.J.S.C.
This is a prerogative writ action wherein plaintiff Hudanich is challenging the validity of a special reasons variance and ordinance interpretation granted by defendants Borough Council of the Borough of Avalon (council) and Board of Adjustment of the Borough of Avalon (board) which benefited defendants-variance applicants Hunts Theatres, Inc. (Theatre) and Greenberg. The parties previously filed cross-motions for summary proceeding on the record. These motions were denied without prejudice in a letter opinion of this court, because factual issues existed as to plaintiff's second-count allegation that the variance meeting violated the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. The court invited the parties to enter into a stipulation of facts on this issue and upon renewal of the cross-motions the court would decide the case based on the record of the administrative hearings. The parties have entered into such a stipulation of facts and the cross-motions had been renewed. Accordingly, the case is now amenable for disposition.
The record reveals that defendants Theatre and Greenberg are owners of premises designated as Block 28.01, Lots 11.03, 11.01, 13.03, 13.04, 15.01, 15.02, 15.03, 17.01, 17.02, 17.03 and 18, on the tax map of Avalon. The premises consisted of a pier structure upon which rested a building composed of one 550-seat theatre and two stores. The pier structure is on the ocean or eastern side of the boardwalk, between 28th and 29th Streets of the borough, with beach on either side, north and south, and ocean to the rear of the pier. Defendants Theatre and Greenberg acquired this property from the Borough of Avalon on May 21, 1971 at a public auction.
*249 The history behind the building situate on defendant Theatre and Greenberg's property is important to the disposition of this case. The structure itself is approximately 50 years old. From its inception the building had been used, at various times, as a theatre, bathhouses, luncheonette, gift shop, game room and skee-ball alley for the benefit of the public using the beach and boardwalk. When the property was deeded to Theatre and Greenberg in 1971 the deed contained two restrictions. The first was that the premises be used at all times to show movies and the second was that operation of restaurant and stores be continued. In the summer of 1979 Avalon removed the movie restriction but maintained the restriction as to the operation of the restaurant and stores. From 1971 until 1978 Theatre and Greenberg operated the premises as a theatre and skee-ball alley. During that period these defendants had to expend considerable sums in renovation of the building and supporting pier. In the fall of 1978 the theatre ended operations due to the cost of continued renovations and the decline of movie attendance by the public in the Avalon area. On March 8, 1979 Theatre and Greenberg received notice from Avalon that the theatre was declared an "unsafe structure" and thus could not be opened to the public without substantial repairs to the structure. Theatre and Greenberg received subsequent notices from Avalon to the same effect in April and December of the same year. On April 20, 1979 defendants Theatre and Greenberg received estimates from an engineer that the repairs necessary to make the theatre building comply with Avalon's building code would cost approximately $80,000. However, the building, even with these repairs, would remain in a rather dilapidated condition. At this point in time Theatre and Greenberg decided not to renovate the building, but rather tear it down and construct in its place seven stores.
On February 7, 1980 Theatre and Greenberg, each represented by counsel, appeared before defendant board seeking approval of a plan for construction of the seven stores. Also at the meeting was plaintiff Hudanich, who was also an owner of a *250 store located approximately 200 feet from Theatre and Greenberg's property. The theater-store structure is located in a public conservation (P-C) zone which does not permit a store use and does require a side-yard clearance of ten feet. Theatre and Greenberg's plan was incongruent with the zone in terms of use, and the side-yard clearance on the north side of the pier was eight, rather than ten, feet in length. Accordingly, Theatre and Greenberg's application entailed a use and side-yard variance.
The testimony presented by Theatre is important concerning the validity of the variance pursuant to statutory directives. William Hunt, an officer of Theatre, testified as to the decline in movie attendance, the decline of profits in operation of the theatre and that the building was declared an unsafe structure by Avalon. At this juncture the Avalon notices of unsafe structure were received into evidence by the board.
The next witness was another officer of Theatre, William Dry. Dry, besides discussing profit and loss figures with the board, also testified to the existence of the prior uses of the premises, e.g., luncheonette, gift shop, game room and skee-ball alley. At this point Theatre presented its proposed plan, consisting of structural design, measurement and description, to the board. The plan was marked into evidence. The board noted that there were captions in the plan above each of the stores that were similar to the prior uses of the premises. Dry indicated these captions were not necessarily binding as to the use of each store. Upon questioning, Dry indicated that the stores, which would be leased, would not be utilized for any noxious purpose such as a fish store, and that there were certain guidelines upon which Theatre would not lease the stores. Nobody asked for further elaboration of these guidelines.
Finally, defendant Greenberg presented Harry Clayton, who was the fire marshall for Avalon for eight years and the construction code official of that community since 1977, as a witness. Clayton, from his personal knowledge and inspection of the building, testified in terms of life safety that the seven *251 stores as proposed would be more "palatable" than the existing structure. Clayton also testified, based on inspections of the building, that it should be torn down because the building could never be repaired to the point of complying with Avalon's codes. During the course of all of the above testimony there was no challenge by any member of the public, especially Hudanich, of any of the evidence presented.
During the course of testimony there was some confusion in ascertaining exactly in what zone the Theatre and Greenberg property was situated. Allen Lovegrove, a zoning planner for Avalon, testified that the property was indeed in a public conservation (P-C) zone.
At the conclusion of the testimony the counsel for all parties were permitted to summarize their positions. However, before the summations the Solicitor for the Board stated, "Before we go into executive session or open the deliberations up I think if [counsel] would like to make closing comments now is the time to do that." After the summations the chairlady of the board stated, "We will now go into executive session." The events transpiring during this "executive session" constitute the stipulations of fact agreed between the parties. The deliberations of the board at this point were conducted in the same room as the hearing and in full view of the public. Although the discussion of the board was not audible to all members of the general public, as many of them left their seats and formed small discussion groups or went into the hall outside the meeting room, anyone who wished to hear the deliberations was free to move toward the front of the meeting room and listen. This deliberation period lasted for about 15 to 20 minutes. During this period the stenographer did not record the deliberations but noted in the record, "Discussion during the executive session before the public takes place."
After this "executive session" the solicitor for the board recounted the discussion on the record. The content of this recount was the consensus of the board that Theatre and Greenberg's *252 plan application should be granted subject to ten conditions. Noteworthy among these conditions are that there must be a minimum of eight feet access area on the north side (the side yard) and that, other than specifically provided, the structure must be constructed in conformity to the plans Theatre and Greenberg submitted. The record reveals that "special reasons" criteria were utilized in the granting of the conditioned variance for the implementation of Theatre and Greenberg's plan. The record then reveals that, after some discussion, the board publicly voted unanimously to adopt the resolution granting the special reasons variance.
The resolution embodying the terms of the variance enumerates factual findings for the special reasons variance, notably, that safety will be improved by elimination of the theatre use. The resolution also states that the proposed use is consistent with prior uses and that the store use is consistent with beach use. It is important to note that during the course of the entire hearing the parties used the term "use" in reference to the application for variance; however, what was actually discussed was a use and side-yard variance as part and parcel of the submitted plan.
On February 15, 1980 Hudanich filed an appeal to the council contesting the variance. However, during the pendency of that appeal, on March 6, 1980, upon notice to Hudanich's attorney, Theatre sought certification before the board, under N.J.S.A. 40:55D-17(f), to permit demolition of the remaining portion of the partially destroyed building. The grounds of the certification were essentially that the building posed an imminent peril to life. Theatre, which worried that total destruction of the building would prejudice the nonconforming use status of the property if the appeal to the council was granted in favor of Hudanich, moved that either a stipulation be made that such total destruction of the building would not prejudice the nonconforming use status of Theatre and Greenberg's property or that the plan previously considered be deemed a "restoration" under the Avalon codes, thus making a variance unnecessary. Theatre *253 submitted this interpretation-restoration issue to the board at the February 7, 1980 hearing, but since the issue was not considered Theatre argued it could be revived at the certification hearing. The board heard extensive testimony as to the dangers presented by the remaining portion of the structure and also heard Theatre and Greenberg's counsels' arguments for the interpretation of the Avalon ordinance regarding the "restoration" status of the property plans. The board passed a resolution certifying that the building should be destroyed, that the structure plans approved at the February 7, 1980 hearing constituted a "restoration" and that a variance was not necessary. Hudanich had not appealed the results of the March 6, 1980 meeting to the council.
On April 7, 1980 defendant Council convened to consider Hudanich's appeal of the variances. The appeal was based on the record of the February 7, 1980 hearing, the arguments of counsel for all parties and the observations of one of the council members who stated in the record that he actually attended that variance hearing. Upon consideration of all the evidence the council affirmed the board's grant of the variance and a resolution to that effect was passed unanimously by the council.
On May 16, 1980 Hudanich filed a complaint for this instant action. However, the summons was served on defendants on May 29, 1980, or 13 days after the filing of the complaint.
The issues in the instant case will be addressed in the following order: (1) whether plaintiff's complaint should be dismissed under R. 4:4-1 and R. 4:37-2(a) for failure to serve the summons on defendants within ten days after filing of the complaint; (2) whether the February 7, 1980 meeting violated the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq.; (3) whether the grant of the variance and its affirmation was arbitrary and capricious, and (4) if the variance was improper, was the restoration interpretation controlling?

*254 I. Dismissal of Complaint

The immediate concern of this action is if the service of summons was so defective and prejudicial to defendants as to warrant dismissal of this action. As noted earlier, the service of summons was three days out of time.
It is correct, as defendant Theatre asserts in its answer, that R. 4:4-1 does specify that an action may be dismissed if the summons is not served on defendants within ten days after the filing of the complaint. However, such dismissal is not mandatory, for R. 4:4-1 cross-references to R. 4:37-2(a), which explicitly states dismissal is discretionary with the court. See Raskulinecz v. Raskulinecz, 141 N.J. Super. 148, 151 (Law Div. 1976).
The case of McLaughlin v. Bassing, 51 N.J. 410 (1968), rev'g on dissent, 100 N.J. Super. 67 (App.Div. 1967), stated various factors that militated against dismissal despite the tardiness of service of summons after filing of complaint. Noteworthy among those factors was whether there was no specific or demonstrable prejudice resulting from the time delay or whether the defendants were unaware a complaint had been filed due to the defective service of summons. 100 N.J. Super. at 70. In the case at bar there has been no showing whatsoever that defendants have been prejudiced. Similarly, it would be unrealistic to assume defendants are unaware or were unaware of Hudanich's movements concerning the Theatre and Greenberg property.
Accordingly, for the above-stated reasons, this action will not be dismissed under R. 4:4-1 and the merits of the action will be addressed by this court.

II. Sunshine Law
Hudanich asserts that the board hearing of February 7, 1980 violated the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq., and thus the results of that meeting, and inferably meetings thereafter being predicated on the initial grant of the variance, *255 were void and of no effect. Hudanich specifically alleged that the calling of an "executive session" by the solicitor and chairlady constituted a violation of N.J.S.A. 10:4-13, which requires an open hearing and resolution before an executive session may proceed. Hudanich also asserts that the deliberations in the "executive session" precluded the meeting from being open to the public at all times and were thus in violation of N.J.S.A. 10:4-7. Upon review of the stipulations of fact on this issue it is apparent that Hudanich erroneously places undue emphasis on the words "executive session," rather than observing the substance of the hearing. It is an unfortunate practice of the parties involved in the instant litigation to engage in misnomers. The record adequately reveals and supports this court's agreement with the board and council's positions that the unfortunate use of the term "executive session" was indeed one such misnomer.
Both the Sunshine Law and the Municipal Land Use Act, N.J.S.A. 40:55D-1 et seq., deal with public meetings before land use agencies. The New Jersey Supreme Court has deemed that the Sunshine Law must be met with literal compliance. Polillo v. Deane, 74 N.J. 562, 577 (1977). Toward this end the Sunshine Law specifies under what conditions, which need not be set forth at length herein, the public may be excluded from a public body meeting. N.J.S.A. 10:4-12(b). However, before such exclusion can occur an appropriate resolution must be passed at a public meeting. N.J.S.A. 10:4-13.
Under the Land Use Act there are three types of meetings. The first is a "regular" meeting which is scheduled on a regular basis and used to conduct all the business of the municipal agency. N.J.S.A. 40:55D-9(a). The second is a "special" meeting which similarly conducts all the business of the municipal agency, but can only be initiated by a call of the chairman or by request of two agency members. Ibid. The most important common thread running through these two types of meetings is that they both must be open to the public. N.J.S.A. 40:55D-9(b). The third type of meeting is an "executive session," which *256 is explicitly held by statute not to constitute a "regular" or "special" meeting under N.J.S.A. 40:55D-9(b), and the subject matter of such executive sessions consists solely of "procedural preliminaries ... and not substantive questions before the board for hearing and decision." Accardi v. North Wildwood, 145 N.J. Super. 532, 548-549 (Law Div. 1976).
Considering the definitions of each type of meeting resolves the instant issue. In the case at bar the so-called "executive session" was held in public and consisted of substantive discussion as to the variance. Accordingly, by definition the deliberations that took place were not an executive session. The language of the Accardi decision underscores this conclusion: "an executive session is not a regular meeting or special meeting where the public is allowed, and therefore there cannot be an executive session at a regular or special meeting where the public is present." Id. at 549. Therefore, since no executive session occurred, no prior hearing or resolution was required under N.J.S.A. 10:4-13 for the board's deliberations.
Hudanich's next contention is that the board's deliberations violated the Sunshine Law in that the events surrounding the deliberations precluded the public from witnessing the board discussions. The fact that there were members of the public who were in the same room as the board does weigh heavily in resolution of this contention, but it is by no means dispositive.
The Sunshine Law embodies two principles. The first can be ascertained from the act's introductory statement: "This bill requires that the public and the press have advance notice of and the opportunity to attend most meetings...." N.J.S.A. 10:4-6 (emphasis supplied). The second can be gleaned from our Legislature's declaration that "the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of deliberation, policy formulation and decision making of public bodies, is vital to the enhancement and proper function of the democratic process...." N.J.S.A. 10:4-7 (emphasis supplied). From these legislative statements it is clear *257 that the public must be given an opportunity to attend a municipal body meeting and that the attendance must be meaningful insofar as the attending public can witness the panorama of discourse and decision among the agency members and between the agency members and the public. Caldwell v. Lambrou, 161 N.J. Super. 284, 288 (Law Div. 1978); Woodbury Times v. Gloucester Cty. Sewerage Auth., 151 N.J. Super. 160, 164 (Law Div. 1977).
It is the function of the court "to ascertain the intention of the Legislature from the plain meaning of the statute and apply the facts as it finds them." Watt v. Franklin, 21 N.J. 274, 277 (1956). In the instant case the intent of the Legislature and the facts are clear. The public had the opportunity to attend the February 7, 1980 hearing for the entire duration of the Theatre-Greenberg variance application. The hearing and deliberations took place in the same room and there is absolutely no indication that anyone was removed from the room because of the calling of the "executive session." Case law principles demonstrate that where the public is not barred and the board members do not leave the room to convene in private, the meeting is public and, as far as the opportunity to attend is concerned, there is literal compliance with the Act. Scott v. Bloomfield, 94 N.J. Super. 592, 600 (Law Div. 1967); Tidewater Oil Co. v. Carteret, 80 N.J. Super. 283, 289 (Law Div. 1963). If it is Hudanich's intimation that the call of the "executive session" implicitly chased some members of the public from the hearing room, the fact that people remained in the room and made efforts to listen to the board deliberations militates against such a conclusion. Accordingly, the public did have the opportunity to attend the entire variance application that is the subject of this case.
The public's attendance was also meaningful. Those members of the public who wished to listen to the board discussion acted accordingly and moved closer to the conference table. Every word was audible to those who wanted to listen. These facts, *258 buttressed by the detailed recount of the deliberations, belie the position that the public was not privy to all substantive discussions and decisions of the board. Furthermore, the actual vote by every member of the board was made before the public and on the record. The only conclusion that can be made is that the public's attendance was meaningful as to the granting of the variance.
Finally, Hudanich contends that the lack of a stenographic recording of the board discussion during the "executive session" renders the meeting and its resultant decision void under the Sunshine Law. This assertion is erroneous as a matter of law. The Open Public Meetings Act only requires that "reasonably comprehensible minutes" be kept. N.J.S.A. 10:4-14. The Municipal Land Use Act similarly requires that minutes be kept. N.J.S.A. 40:55D-9(c). Neither statute requires a verbatim recordation of such meetings. In Caldwell v. Lambrou this exact issue was entertained by the court and the conclusion reached was that "[b]oth the Open Public Meetings Act ... and the Municipal Land Use Act ... require only the taking of minutes at regularly scheduled board of adjustment meetings and nothing in either act requires that verbatim transcripts be continued without interruption once commenced." 161 N.J. Super. at 287. In the present case more than adequate minutes had been taken at the meeting of February 7, 1980, and thus Hudanich's contention is in error and cannot stand to invalidate the variance hearing.
This court thus finds that the February 7, 1980 variance hearing involving the instant parties was in literal compliance with the Sunshine Law and Land Use Act. Accordingly, that meeting and its resultant decisions and subsequent meetings pertaining thereto will not be voided under N.J.S.A. 10:4-15, as there was no violation of the Sunshine Law.

III. The Variance
As noted in the "executive session" discussion, supra, this case abounds with misnomers. The actions taken in pursuance of the *259 special reasons variance in this case are unfortunately no exception to this conclusion. The plan that defendants Theatre and Greenberg presented to the board was a package that required both a use and two-foot side-yard variance. Whenever discussion ensued about the "use," the record consistently reflects that the parties were speaking in terms of the plan as a whole and thus discussion was actually concerned with a use and side-yard variance together. In order to clarify "discussion," this observation should be kept in mind when only the term "use" appears.
The board granted the use and side-yard variances on the ground that "special reasons" existed for such action. Such authority for the board exists in N.J.S.A. 40:55D-70(d). Exactly what constitutes a special reason is not found in the above statute and thus resort must be made to case law. Andrews v. Ocean Tp. Bd. of Adj., 30 N.J. 245, 251 (1959). Decisional law of New Jersey consistently dictates that since no precise formula is feasible for a "special reason," each case necessarily turns upon its own facts. Kohl v. Fair Lawn, 50 N.J. 268, 276 (1967). In turn, these facts may constitute a special reason if they are congruent with the purposes of the Land Use Act, which can be found in current form at N.J.S.A. 40:55D-2. Kessler v. Bowker, 174 N.J. Super. 478, 485 (App.Div. 1979). See, also, Yahnel v. Jamesburg Bd. of Adj., 79 N.J. Super. 509, 517 (App.Div. 1963), certif. den. 41 N.J. 116 (1963); Bern v. Fair Lawn, 65 N.J. Super. 435, 446 (App.Div. 1961), which stand for the same proposition under the prior version of the Land Use Act at N.J.S.A. 40:55-32.
The purposes of the Land Use Act are, in relevant part:
It is the intent and purpose of this act:
a. To encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals and general welfare;
b. To secure safety from fire, flood, panic and other natural and man-made disasters; ....

N.J.S.A. 40:55D-2; [emphasis supplied]
*260 In considering the aforementioned purposes of the act, the conclusions of the board based upon their factual findings become relevant. The board stated, in relevant part in Resolution 80-1 which embodied the grant of the variances, that:
... [T]he Zoning Board of Adjustment has determined that special reasons exist for the relief sought by the applicant for the following reasons:
........
B. Safety will be improved by elimination of theatre use.
The common denominator between the purposes of the act and the board's conclusion is safety. Accordingly, the decisional-law method of ascertaining a special reason directs that promotion of safety qualifies as grounds for a legitimate special reason for a variance under N.J.S.A. 40:55D-70(d). Kessler v. Bowker, supra 174 N.J. Super. at 484. It is only required that one of the purposes, rather than a number of purposes, of the act support the special reason. Wajdengart v. Broadway-Thirty-Third Corp., 66 N.J. Super. 346, 352 (App.Div. 1961); Whitehead v. Kearny Bd. of Adj., 51 N.J. Super. 560, 570 (App.Div. 1958). Also, a special reason variance can be granted for use or structure proposals, Kessler v. Bowker, supra 174 N.J. Super. at 484, which in the instant case would translate into the use and side-yard variances.
At this juncture the court's inquiry is directed to whether the board was presented with evidence that would reasonably support the granting of special reason variances in terms of safety. The scope of this inquiry is restricted to the record of the February 7, 1980 hearing. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 289 (1965); Tomko v. Vissers, 21 N.J. 226, 237 (1956). In reviewing the record the court has an extremely limited role. Initially the action of the board is presumed to be valid, Kenwood Assoc. v. Englewood Bd. of Adj., 141 N.J. Super. 1, 4 (App.Div. 1976), due to the proper recognition that the board members are the ones most familiar with the community's characteristics and needs. Kramer v. Sea Girt Bd. of Adj., supra 45 N.J. at 296, quoting Ward v. Scott, 16 N.J. 16, 23 (1954). From this presumption flows the black-letter rule of law that *261 the sole function of the trial judge is "to determine whether the municipal authorities could reasonably conclude from the evidence presented that a special reason existed for the granting of the variance." Kessler v. Bowker, supra 174 N.J. Super. at 486. See, also, Kramer v. Sea Girt Bd. of Adj., supra 45 N.J. at 285, 296; Jenpet Realty Co. v. Ardlin, Inc., 112 N.J. Super. 79, 84 (App.Div. 1970). It is under the guidelines articulated above that the propriety of the special reasons variances will be tested.
The applicants must present competent evidence for the variance. Dolan v. DeCapua, 16 N.J. 599, 609-610 (1954). Towards this requirement defendants Theatre and Greenberg presented the uncontroverted testimony of various witnesses. As stated in the facts, Hunt testified that the building was declared unsafe, and Clayton, the fire marshall-construction code official, stated upon personal inspection of the premises, that "From the standpoint of life safety I would say as fire marshall the stores would be more palatable." Clayton also testified that the existing structure could never be conformed to the code requirements of Avalon and that the structure should be torn down. Based upon this record of evidence and considering the significance that the proposed plan safety testimony before the board and public was uncontroverted, this court is compelled to find that the board could have reasonably concluded that the construction of the seven stores as proposed in the plan could have promoted safety. To find otherwise would constitute a substitution of this court's judgment on the merits of the evidence which would be impermissible. Weiner v. Glassboro Bd. of Adj., 144 N.J. Super. 509, 520 (App.Div. 1976). Accordingly, the special reason, to wit, safety, was properly found as to the use and concommitant side-yard variances. Thus, the special reasons criteria determination of the board was not arbitrary and capricious.
The Land Use Act also requires that the applicant prove the negative criteria of the act. This entails that there would be a lack of substantial detriment to the public good and purpose of *262 the zoning plan and ordinance if the variances were granted. N.J.S.A. 40:55D-70(d); Weiner v. Glassboro Bd. of Adj., supra at 516; Ring v. Rutherford, 110 N.J. Super. 441, 445 (App.Div. 1970), certif. den. 57 N.J. 125 (1970), cert. den. 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971).
The threshold inquiry pertains to Hudanich's charge that since there was confusion as to in what zone the subject property was located, the board could not determine the lack of substantial detriment and thus the case should be remanded for a determination on this issue. Such a request ignores two points. The first is that Allen Lovegrove, a zoning planner for Avalon, testified that the property was in a public conservation (P-C) zone. The second point is that, assuming the board chose to disregard their zoning planner, the governing body (council) reviewed the record and confirmed that the P-C zone designation was accurate, and thus affirmed the board action in this regard. Thus, to remand for a determination that has already been correctly made would be an irresponsible waste of time. Accordingly, the remand request on this ground will not be granted.
Pertaining to the substance of the negative criteria, the testimony of Dry becomes important. He testified as to the consistency of proposed use to the prior uses attendant to the property, and gave indicia that noxious uses of the premises would not be permitted by Theatre. Also, the proposed plan, laden with use designations and structural specifications, was presented to the board during Dry's testimony. Attendant to Dry's testimony and the submission of the plan are certain facts that appear unchallenged throughout the course of the hearing. One such fact is that the pier building had served the beachfaring public. The other important fact is that the Theatre-Greenberg property is unique in Avalon, as it is sided by beach and backed by ocean. Finally, the fact that Avalon did not remove the store-use restriction from the deed to the premises in question is important. These facts indicate that Avalon demands that the store uses, e.g., restaurant, gift shop, game room or *263 skee-ball alley, continue to operate at the property. These facts also indicate that the two-foot side-yard variance would not harm the public or zoning plan or ordinance, as the property to which the variance was given was invariably tied to beach use and unique, and thus could not pose a burdensome precedent on the enforcement of Avalon's zoning laws. The evidence in the record, which must be noted as uncontroverted, allows this court to conclude that the board could have reasonably concluded that the negative criteria of the act had been met. Accordingly, the board's determination on this issue was not arbitrary and capricious.
Hudanich's last complaint as to the board action is that the granting of the side-yard variance was arbitrary and capricious under N.J.S.A. 40:55D-70(c) because the property in question was not proven to be exceptionally narrow or shallow, or of exceptional shape, and that there was a lack of a showing of hardship. This contention is without merit, as the side-yard variance was granted on section d "special reasons" grounds, not on section c grounds, and thus Hudanich's claim in this regard rests upon the wrong test.
Therefore, the variance grants for the proposed plan, consisting of a use and side-yard variance based upon special reasons and a finding that the negative criteria of the act have been met, having been based on uncontroverted evidence in the record upon which the board could reasonably base its conclusions, are not arbitrary and capricious and thus will not be voided by this court.
Hudanich also claims that the council's affirmation of the board resolution was arbitrary and capricious. However, Hudanich's complaint, motion papers and trial memorandum are devoid as to how the council affirmation can be so characterized. Apparently the grounds are derivative from the contention that the board's actions were arbitrary and capricious. If this is Hudanich's position, it is fallacious in that the board decision was not arbitrary and capricious. Furthermore, the council, pursuant to the dictate of N.J.S.A. 40:55D-17, thoroughly reviewed *264 the record, listened to oral testimony and concluded in unanimity that the board properly granted the variances. This court thus finds that there is no ground upon which the council affirmation could be deemed arbitrary and capricious. Accordingly, the council decision will not be overturned.
Hudanich finally asserts that the New Jersey Coastal Area Facility Review Act (CAFRA), N.J.S.A. 13:9-1 et seq., pertains to Theatre and Greenberg's property, but does not allege anything else. Since there is an absence of a cause of action in this charge, as well as it being that it is the responsibility of the Department of Environmental Protection, not plaintiff Hudanich, to prosecute violations under the Act, N.J.S.A. 13:19-18, no decision will be rendered on this assertion.

IV. The Restoration Interpretation
Since the use and side-yard variance are affirmed, it is beyond this court's responsibility to rule on the procedural and substantive merits attendant to the board's restoration interpretation of Avalon ordinance 27:7.5(b). To so rule on this issue would constitute an advisory opinion.
Therefore, the variances are affirmed. Defendant Hunts Theatres, Inc. will supply the court with the appropriate form of order.