ROBERTSON, Justice,
for the Court.
I.
We are here presented with our first opportunity to construe the Mississippi Open Meetings Law, Miss.Code Ann. §§ 25-41-1 et seq. (Supp.1982). That law, colloquially referred to as the “Sunshine Law”, became effective January 1, 1976.
On May 25,1982, the Vicksburg Planning Commission (VPC)[1] met with two expert city planners to consider an extension of the corporate boundaries of the City of Vicksburg. Citing the fact that contemplated litigation was to be discussed, VPC called an executive session. All attorneys, members of the press and the public were excluded.
The publisher of the Vicksburg Evening Post (“The Post”), Appellee here, claims that the executive session was held in violation of the Open Meetings Law. The Chancery Court agreed. The injunctive relief requested by the Post was granted.
With little doubt, the Vicksburg Planning Commission is a “public body” within the meaning of the Open Meetings Law. The meeting of May 25, 1982, was clearly a covered meeting. We hold, however, that the meeting was in substance a strategy session with respect to prospective litigation. It was, therefore, within what has *1335 come to be known as the Litigation Exception to the Sunshine Law. The Planning Commission had lawful power to hold an executive session and exclude therefrom members of the press and the public. We reverse.
II.
A.
The City of Vicksburg Planning Commission was created by the Mayor and Board of Aldermen in 1960 by the passage of Ordinance 60-2. The Ordinance provides that the VPC shall consist of not less than ten ordinary citizens serving in an advisory capacity without pay. Certain city officials, including the Board of Supervisors, Mayor and Aldermen, Chairman of the Board of Zoning Appeals, Court Commissioner, Chairman of the Vicksburg School Board, and members of the Housing Authority are appointed as ex-officio members.
The VPC is charged to harmonize city planning. Its duties relevant to the present controversy include consideration of “extension of corporate boundaries of the city, as related to feasibility, service to be rendered and economic and physical factors”. The VPC acts in an advisory capacity only. It makes recommendations to the Mayor and Board of Aldermen, who in turn have authority to accept or reject those recommendations.
In the spring of 1982 the City of Vicksburg was considering possible expansion through annexation of additional lands in Warren County. Representatives of the University of Mississippi Department of Urban and Regional Planning had been engaged to assist in determining areas for annexation. On May 25,1982, a meeting of the VPC was called to discuss a preliminary draft of this study. Invited to attend the meeting were two professional city planners, each of whom had had substantial experience in consultation with cities in preparation for annexation. Each had provided expert witness testimony in prior annexation trials around the state. Each was a probable expert witness for the City of Vicksburg in the anticipated annexation litigation.
As the meeting convened, there were present, in addition to a quorum of VPC, two reporters from The Post, the lawyer for The Post and the lawyer for the City. Soon after the meeting began, the Commission determined that it should go into a closed executive session. The Commission announced that it considered this a meeting for the purpose of discussing matters related to prospective litigation, thus coming within the Litigation Exception to the Public Meetings Law under Miss.Code Ann. § 25 — 41—7(4)(b). After protest, The Post’s lawyer and reporters left.
The meeting lasted for approximately two hours.
B.
The next day, May 26, 1982, The Post brought this action in the Chancery Court of Warren County, Mississippi. At an expedited hearing held shortly thereafter, the above facts and circumstances were related. Testimony also reflected that there was an organization known as the Warren County Property Owners Association which had publicly announced that it intended to oppose any extension of the Vicksburg city limits. This same group had opposed Vicksburg’s annexation in 1976 which had resulted in litigation.
In the trial court the City continued to insist that the meeting and all proceedings thereat were entitled to confidentiality protection under the law. Because it was necessary in order to enable him to consider the City’s claim of the Litigation Exception, the Chancellor received a copy of the minutes of the meeting for in camera inspection. These minutes were not disclosed to The Post or its counsel. They have, however, been reviewed by this Court as a part of the proceedings on this appeal.
Upon his review of the minutes the Chancellor found the various discussions among the members of the Commission devoted to matters such as police and fire protection, ad valorem taxes on real and personal property, the action in Chancery Court for annexation, health hazards, sewage plans, population growth, and recreational facili *1336 ties. He noted that maps were displayed showing the areas proposed for annexation.
At the conclusion of the hearing, the Chancellor held that the City of Vicksburg Planning Commission was indeed a “public body” within the meaning of the Open Meetings Law. He then issued an injunction directed to the City which provided in substantial part as follows:
2. The City of Vicksburg Planning Commission is hereby permanently enjoined from holding any meetings in executive session such as the one held on May 25, 1982.
3. Another open meeting of the City of Vicksburg Planning Commission is to be held within a reasonable time to discuss the matters mentioned in the opinion of this Court delivered from the bench on June 15, 1982, as well as any other items that may be inquired into by members of the Commission, and no report to the Mayor and Board of Aldermen or recommendations shall be made until a reasonable time after such open meeting has been held. The “Minutes, Planning Commission Meeting, 5-25-82” which were submitted to the court for in camera inspection shall be made available to the public.
4. The City of Vicksburg Planning Commission and the Board of Mayor and Aldermen may hold future meetings in executive session to discuss strategy or negotiating with respect to prospective litigation according to Section 25-41-5, § 4-B, but the prospect for litigation must be imminent and under circumstances necessitating the presence of the attorneys for the Commission or Board involved and the executive session must be confined to the narrow issue of prospective litigation.
III.
Walt Whitman thought “heroic deeds were all conceived in the open air”.[2]' Governmental service ought be noble, if not heroic. Local self-government, through agencies such as the Vicksburg Planning Commission, remains the essence of our democracy. Our legislature has decreed that its acts ought be conceived in the open air. That our statutes may be judged by some to have fallen short of the poet’s perfection does not undercut the power of their policy. Openness in government is the public policy of this state.[3] It is conducive to good government, and heroic deeds.
We are acutely aware that we live in an age when secrecy in government generates suspicion and mistrust on the part of our citizenry. Government which does not have the confidence of the people can never govern effectively. However inconvenient openness may be to some, it is the legislatively decreed public policy of this state.
Because the policy of this Act is so important, we quote in full its declaration:
It being essential to the fundamental philosophy of the American constitutional form of representative government and to the maintenance of a Democratic society that public business be performed in an open and public manner, and that citizens be advised of and be aware of the performance of public officials and the deliberations and decisions that go into the making of public policy, it is hereby declared to be the policy of the State of Mississippi that the formation and determination of public policy as public business and shall be conducted at open meetings except as otherwise provided herein. Miss.Code Ann. § 25-41-1 (Supp.1982).
This policy is then implemented by the basic mandate of the Open Meetings Law which provides as follows:
All official meetings of any public body, unless otherwise provided in this chapter or in the Constitutions of the United States of America or the State of Mississippi, are declared to be public meetings and shall be open to the public at all times unless declared an executive session *1337 as provided in Section 25-41-7. Miss. Code Ann. § 25-41-5 (Supp.1982).
It is our hope that what we say hereafter be found faithful to these principles and policies.
IV.
The City of Vicksburg and its Planning Commission claim here that the jurisdiction of the Open Meetings Law does not extend to the Planning Commission. The VPC, they say, is not “a public body” to which the Act applies. Two theories are urged. First, it is suggested that we draw meaning from the fact that the words “advisory committee” or “advisory commission” are not included in the statute following the words “municipal corporation”. Second, it is urged that the coverage of the Act is limited to “policy making entities” and that agencies, such as VPC, which have no power to make final binding decisions are necessarily excluded.
The question turns on a construction of the statute, the principles and policies discussed in Part III always kept well in mind. In the definitions section of the law, Miss. Code Ann. § 25-41-3(a) (Supp.1982), the term “public body” is defined as follows:
(i) any executive or administrative board, commission, authority, council, department, agency, bureau, or any other policy-making entity, or committee thereof, of the State of Mississippi, or any political subdivision or municipal corporation of the state, whether such entity be created by statute or executive order, which is supported wholly or in part by public funds or expends public funds, ... [Emphasis added]
We would think it would follow as a matter of common sense that the statute would include all agencies, commissions, committees, departments or bureaus of any “municipal corporation” unless there is an express exclusion thereof. Indeed, the same section of the law, Section 25-41-3(a) contains many express exemptions from coverage, but one can search in vain for language remotely suggesting exclusion of the Vicksburg Planning Commission. Though frequently employed, the lawyer’s wooden argument that the failure of express inclusion intends an exclusion is here as usual disingenuous. The Vicksburg Planning Commission performs important functions within the City of Vicksburg and is an arm of the city created by city ordinance and supported wholly or in part by public funds. It is a “public body”.
The City’s “policy making entity” argument fares no better. The City would have the Open Meetings Law construed so that only the meetings of agencies empowered to make final binding decisions would be covered. It notes that the Vicksburg Planning Commission only recommends annexations. The sole power to adopt an annexation ordinance is vested in the Mayor and Board of Aldermen.
It is certainly true that the legislature of this state would have had the power to limit the application of the Open Meetings Law so that advisory or recommending agencies were not covered.[4] In our reading of our statute, however, it has not done so. We *1338 find neither statutory language nor legislative intent that would exclude from the coverage of Mississippi’s Open Meetings Law the Vicksburg Planning Commission on grounds that its powers are advisory only.[5]
The Vicksburg Planning Commission is an agency that plays a substantial role in making policy. That it is not exclusively responsible for approving annexations in no way denegrates the importance of its role in the formulation of city policy. The Vicksburg Planning Commission is a sufficient participant in policy making within the City of Vicksburg to bring itself well within the applicable statutory definition, even were we to credit the argument advanced by the City here.
V.
A.
The heart of this case is the Litigation Exception issue. The Open Meetings Law expressly provides that:
(4) A public body may hold an executive session pursuant to this section for one or more of the following reasons:
* ⅝ ⅝: sfc ⅜; ⅝
(b) Strategy sessions or negotiations with respect to prospective litigation, litigation or issuance of an appealable order when an open meeting would have a detrimental effect on the litigating position of the public body.
Miss.Code Ann. § 25-41-7 (Supp.1982).
The meeting in question clearly related to prospective litigation. In the first place, there is no way the City can confirm an annexation other than through formal judicial proceedings instituted in the Chancery Court where the city or land is located.[6] Miss.Code Ann. § 21-1-29 (1972). Though not all annexations are contested, the evidence at trial established that the Warren County Property Owners Association had announced its intention to oppose any annexations. The threats of this group are credible in view of its past record of annexation litigation.
The Post nevertheless argues that annexation confirmation proceedings are somehow different from regular litigation and were not within the contemplation of the legislature when it enacted the Litigation Exception. It is within the actual and judicial knowledge of this Court that annexation confirmation proceedings can indeed engender some of the most bitter and hotly contested litigation known to our civil courts.[7] Annexation confirmation proceed *1339 ings are “litigation” within the meaning of Section 25-41-7(4)(b).
A review of the minutes of this meeting make it clear that the prospective annexation litigation was indeed the subject matter of the meeting. At an annexation confirmation hearing in Chancery Court, numerous factors must be considered in the determination of whether the annexation is reasonable and should thus be confirmed. See, e.g., Dodd v. City of Jackson, 238 Miss. 372, 384, 118 So.2d 319, 324 (1960). The minutes of the meeting in question reflect that the Planning Commission discussed, with respect to the areas being considered for annexation, police, and fire protection, ad valorem taxes, health hazards, sewage plans, population growth, recreational facilities and the like. The procedure for obtaining Chancery Court approval was described. Maps of the proposed areas were submitted. As anyone familiar with annexation litigation knows, these are all matters which are important subjects of proof in any annexation confirmation proceeding. The minutes reflect that the discussion took place in the context of the Dodd factors. It was in a very real sense a strategy session in which plans for successful annexation confirmation litigation were discussed.
The Chancellor held that the Litigation Exception did not apply because no attorneys were present. In this he erred. Strategy sessions or negotiations with respect to prospective litigation may be, and no doubt frequently are, held by public bodies in the absence of attorneys. Conversely, the mere presence of an attorney in no way insulates from public disclosure and openness meetings which are not strategy sessions related to litigation. No doubt in many cases the role of an attorney may be a factor to be considered in determining whether the litigation exception applies. It is not, however, outcome determinative. The question must ultimately and always be answered by reference to the statute.
B.
We emphasize that we are concerned here with the construction of a statute. The same legislature which adopted the broad and salutary policy statement quoted in Part III above inserted into the Sunshine Law the Litigation Exception. That same legislature would certainly have the power to modify or repeal altogether the exception. For the present, it is open to us only to interpret it faithfully.
Would be objectors to the annexation are not without means of obtaining in advance of trial the substance of the testimony of the City on the various factors enunciated in Dodd v. City of Jackson, supra, and the other cases. Once formal litigation commences, the discovery rules in the Mississippi Rules of Civil Procedure, Rules 26-37, are readily available to objectors. Beyond that, the substance of the testimony of these two expert witnesses can be obtained under Rule 26(b)(4), Miss.R.Civ.P. Skillful discovery counsel will no doubt be able to elicit practically everything of importance coming out of the May 25, 1982, meeting.
Nor are objectors in any way foreclosed from making known their views in advance of litigation. They are certainly free to appear before the Vicksburg Planning Commission and speak their mind. They are free to do this with or without counsel, with or without expert witnesses of their own. VPC is charged to give good faith consideration to whatever these people may present.
And should the Vicksburg Planning Commission recommend annexation, these would be objectors will have the same opportunities to be heard before the Mayor and Board of Aldermen.
Media representatives, of course, are free to attend and report any of these meetings.
For the present, however, we are concerned with a meeting of the Vicksburg Planning Commission which was in fact a strategy session with respect to prospective litigation. The Litigation Exception to the Open Meetings Law vests in VPC the prerogative to hold this strategy meeting in closed executive session. VPC has chosen to exercise that prerogative, and we have no power to interfere.
VI.
Our holding regarding the Litigation Exception requires that the injunction be va *1340 cated. We find it unnecessary to consider the City’s objections to the form and content of the injunction, with one exception.
The Chancellor construed the phrase “prospective litigation” in Section 25-41-7(4)(b) to mean “imminent litigation”.. This is too restrictive. The phrase “prospective litigation” connotes litigation reasonably likely to occur in the reasonably forseeable future. That part of the injunction limiting the meetings VPC could hold in executive session to discussions of “imminent” litigation was error.
VII.
Via cross-appeal The Post asks for recovery of attorneys fees and its costs of litigation. The Chancery Court denied this relief in the face of sweeping relief granted The Post. Having held that the injunction was erroneously issued, we necessarily affirm on cross-appeal.
REVERSED AND RENDERED ON DIRECT APPEAL.
AFFIRMED ON CROSS-APPEAL.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE,BOWLING, HAWKINS and DAN M. LEE, JJ., concur.
PRATHER, J., not participating.

. The City of Vicksburg, acting through its Mayor and Board of Aldermen, is the creator of the Vicksburg Planning Commission. All are made Defendants below, and all are Appellants here. Although the lawsuit concerns a meeting of the Vicksburg Planning Commission, the Mayor and Board of Aldermen and the City Attorney have assumed complete charge of this litigation.

. Walt Whitman, Song of the Open Road, Stanza 4, line 11, from Leaves of Grass.

. We note that this same policy has substantially produced and undergirds the recent Public Records Act of our legislature. See Miss. Laws (1983) ch. 424, effective July 1, 1983.

. In many states the legislature has chosen to so restrict their laws. See, e.g., Washington School District Number 6 v. Superior Court, 112 Ariz. 335, 541 P.2d 1137 (1976) (Open Meetings Law only apply to meetings at which legal action is taken and the definition of “legal action” provided by the statute excludes application of the law to advisory committees); McLarty v. Board of Regents, 231 Ga. 22, 200 S.E.2d 117 (1973) (Open Meetings Law which only applied to meetings at which official actions are to be taken did not apply to groups which merely collected information, made recommendations or rendered advice); Sanders v. Benton, 579 P.2d 815 (Okl.1978) (Open Meetings Law which only applied to “governing bodies” did not apply to advisory committee formed to recommend particular sites to the Department of Corrections).
Other states have extended the jurisdiction of their Open Meetings Laws beyond governing bodies. Polillo v. Deane, 74 N.J. 562, 379 A.2d 211 (1977) (Open Public Meetings Act applied to meetings of a charter commission which was established to propose improved form of city government but which could not adopt it); MFY Legal Services, Inc. v. Toia, 93 Misc.2d 147, 402 N.Y.S.2d 510 (1977) (Medical Advisory Committee, whose only purpose was to advise a governing board, was subject to Open Meetings Law).

. In fact, in the definition of “meeting” we find language in the statute that suggests to the contrary. It provides: “ ‘Meeting’ shall mean an assemblage of members of a public body at which official acts may be taken upon a matter over which the public body has supervision, control jurisdiction, or advisory power." (Emphasis added). Miss.Code Ann. Sec. 25-41-3(b) (Supp.1982).

. In this respect, annexation proceedings are clearly distinguishable from the zoning cases offered by The Post in support of the Chancellor’s ruling. See, e.g., Accardi v. Mayor and Council of City of North Wildwood, 145 N.J.Super. 532, 368 A.2d 416 (1976); Caldwell v. Lambrou, 161 N.J.Super. 284, 391 A.2d 590 (1978). In Accardi and Caldwell, city zoning boards called executive sessions to discuss applications for zoning variances, claiming the Litigation Exception to the New Jersey statute as their justification. In both cases, the New Jersey court held that the Litigation Exception did not apply. However, under New Jersey law, applications for zoning variances are not decided by a court, and come before the judiciary only when they are appealed. Caldwell v. Lambrou, 391 A.2d at 592. The same is true of zoning applications in Mississippi. City of Jackson v. Wilson, 195 So.2d 470 (Miss.1966).

.Beyond the familiar chancery court annexation litigation, there is the ever present spectre of Section 5 of the Voting Rights Act. 42 U.S.C. § 1973c. An annexation is a change affecting voting. Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); Sperry Rand Corp. v. City of Jackson, 248 So.2d 810, 812 (Miss.1971). As such it must be “precleared” before persons living in the annexed area may vote. Section 5 litigation is certainly another prospect Mississippi communities must consider, and consider very carefully, before they move to annex. See, e.g., City of Rome v. United States, 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980); Dotson v. City of Indianola, 514 F.Supp. 397 (N.D.Miss.1981). Section 5 litigation is certainly within the experience of the people of Vicksburg and Warren County. See United States v. Board of Supervisors of Warren County, 429 U.S. 642, 97 S.Ct. 833, 51 L.Ed.2d 106 (1977).