174 N.J. Super. 478 (1979)
417 A.2d 34
THEODORE P. KESSLER, A/K/A DICK KESSLER, PLAINTIFF-APPELLANT,
v.
KEITH BOWKER AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF WESTAMPTON, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 7, 1979.
Decided December 20, 1979.
*481 Before Judges MATTHEWS, ARD and POLOW.
Joseph F. Polino argued the cause for appellant (Polino & Williams, attorneys; Robert M. Dangel, of counsel; Michael Randall Hamlett, on the brief).
Donald R. Chierici, Jr., argued the cause for respondent Keith Bowker (Casby, Garrigle & Chierici, attorneys; Richard C. Borton, on the brief).
John E. Harrington argued the cause for respondent Township Committee of Westampton (Hartman, Schlesinger, Schlosser & Faxon, attorneys).
PER CURIAM.
This is a zoning case. The defendant Keith Bowker made application for permission to expand his nonconforming retail appliance shop. Variances were required as the proposed expansion was in violation of the use, side yard, bulk and parking provisions of the township zoning ordinance. After failing to secure the requisite affirmative votes from the board of adjustment, Bowker appealed to the township committee. Defendant township committee granted the application, and plaintiff instituted an action in lieu of prerogative writs to set aside the variances. Defendants answered the complaint by asserting that the action of the township committee was proper and that plaintiff was not entitled to relief.
The trial judge, after hearing arguments, found in a comprehensive, oral opinion that the township committee did not act arbitrarily in granting the variances. Judgment was entered in favor of the defendants. Plaintiff appeals.
The property in question is located at Second and Bridge Streets in the historic village of Rancocas, Township of Westampton. Since 1946 it has been used as an appliance and television sales and service store and, for as long as anyone can remember, the building has been used for commercial purposes. It consists of a two-story brick building which was apparently erected some time around the Civil War and located on a lot 52' X 185'. It is uncontradicted that the property is a nonconforming use located in an R-2 district which only permits one-family *482 detached dwellings and accessory buildings. Early in 1977 defendant Keith Bowker applied to the board of adjustment for "c" and "d" variances permitting him to construct an addition to the existing building. The application was made pursuant to N.J.S.A. 40:55D-70(c) and (d). The proposal requested permission to enclose an existing salvage and storage yard and provide additional space for storage. Bowker testified that he needed the additional space to compete effectively with larger stores. His primary contention was that allowing him to construct the addition would have the salutary effect of enclosing his unsightly and potentially hazardous storage area. This storage area extends approximately 35' from the rear of the building. It was used to store old refrigerators and air conditioners, and other such appliances taken in trade to be repaired or sold for scrap. The area is enclosed by a six-foot wooden fence. Bowker contended that by enclosing the area with the proposed brick building he would contribute to the beauty of the area and remove a safety hazard. There was testimony that the storage area was an attractive nuisance which posed a threat to the neighborhood children.
After a plenary hearing the members of the board of adjustment voted 4-3 to approve the application, but because N.J.S.A. 40:55D-70(d) required approval of two-thirds of the membership of the board for a use variance, the proposal was defeated.[1] The record reflects only the naked vote of the board, which made no basic findings of fact or ultimate conclusions. After the vote the attorney for the board explained to Bowker that under a new ordinance adopted by the township he was permitted to appeal the decision of the zoning board to the governing body. Plaintiff did so.
Thereafter, pursuant to N.J.S.A. 40:55D-17(a) and the newly enacted ordinance, the governing body considered the appeal on the record established before the board of adjustment. After hearing arguments, the township committee by a vote of 4-0 reversed the board of adjustment and approved the application. *483 By resolution it made the following findings of fact: first, that the existing building and use violated the parking area, lot area and use provisions of the ordinance, but the violations preexisted the enactment of the zoning ordinance; second, that the 34' immediately to the rear of the existing building had been used for storage and shop purposes; third, that the storage area was unsightly and constituted a safety hazard to area residents, and finally, that the proposed addition was to be constructed in conformity with the distinctive character of the neighborhood and would not result in an increase in business or traffic. From these findings the governing body concluded that the applicant should be permitted to construct a 34' addition, not the 50' requested, enclosing the outside storage area. With reference to the 34' addition, the governing body concluded that enforcement of the zoning regulations "would result in peculiar and exceptional practical difficulties to or exceptional undue hardship upon" Bowker and that special reasons existed for granting a use variance in that the proposed addition "promotes aesthetics and the health, safety and welfare of the residents." The governing body also concluded that the "requested `c' and `d' variances could be granted without substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance."
The resolution conditioned its approval of the requested variances by limiting the extension to 34'; refusing to allow parking on the property immediately adjacent to Second Street; requiring Bowker to provide adequate parking on the rear of the property (although he need not have the 30 spaces required by the ordinance), and that a brick veneer be placed on the addition to conform with the character of the community.
The trial judge affirmed the decision of the governing body, concluding that he was limited to determining whether the decision of the governing body was arbitrary, capricious or unreasonable. In applying that standard he held that the governing body could have concluded, based on the record made before the board of adjustment, that special reasons existed for the grant of a use variance since the addition would beautify the premises and make them safer. He stated:

*484 The record below establishes that the area to which the application is directed is now open, and in that area defendant presently stores appliances of customers which have been left for repairs, and also appliances owned by him which are salvageable. As an open storage yard, it is aesthetically poor, an unsightly yard, out of keeping with the surrounding residential area. The open display of used appliances is a detriment to the neighborhood.
Furthermore, the yard is insufficiently protected and constitutes a potential danger to the young people of the neighborhood who may be attracted to it by the unusual nature and availability of machinery units, within and upon which they may play in manners that their limitless ingenuity renders countless. The storage area is one to which there is now easy access and which, without supervision, can justifiably be said to constitute a safety hazard in a residential neighborhood, the elimination of which is of benefit to the public good.
While it may be argued that adequate fencing and secured gates would provide additional protection against the intrusion of children, it cannot be denied that a greater degree of protection will result from the construction authorized by the variance.
The trial judge also noted that while there was testimony of hardship before the board of adjustment, he was satisfied that the variance was not granted on that ground. Furthermore, with respect to plaintiff's argument that the proofs fell short of satisfying the statutory prerequisites for a "c" variance, he responded that the granting of the variance under subsection "d" for special reasons entitled Bowker to build in violation of the side yard parking and bulk restrictions. He determined that a finding of special reasons negated the need to proceed under subsection "c" of the statute.
Plaintiff's first allegation of error is that the township governing body could not reasonably conclude from the evidence before it that a special reason existed for the granting of the variance sought under N.J.S.A. 40:55D-70(d) or (c). As a collateral argument, he also asserts the court erred in holding that when a municipal governing body has before it the proposed plans of an applicant who is seeking both a "c" and "d" variance and determines to grant the "d" variance, the "c" variance is granted with little further consideration.
We disagree with plaintiff's contentions. Nonconforming uses or structures existing at the time of the passage of an ordinance may be continued. N.J.S.A. 40:55D-68. Bowker's storage yard exists as a nonconforming use, which he has a right to continue. He may not, however, enclose it as a matter of right. The construction of a building to house an outdoor *485 nonconforming use constitutes an enlargement of that use. Monmouth Lumber Co. v. Ocean Tp., 9 N.J. 64, 77 (1952); Hay v. Fort Lee Bd. of Adj., 37 N.J. Super. 461, 466 (App.Div. 1955). Recognizing this, plaintiff made an application for a variance in order to expand his building. To obtain such a variance he adduced proof of special reasons. N.J.S.A. 40:55D-70(d).
The authority of the board of adjustment to grant a use or "d" variance is contained within N.J.S.A. 40:55D-70(d), which provides that the board may
... [g]rant a variance to allow a structure or use in a district restricted against such structure or use in particular cases and for special reasons, but only by affirmative vote of at least two-thirds of the full authorized membership of the board.
No variance or other relief may be granted under the terms of this section unless such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance. An application under this section may be referred to any appropriate person or agency, including the planning board pursuant to section 17 of this act, for its report; provided that such reference shall not extend the period of time within which the zoning board of adjustment shall act. [Footnote omitted]
The basic statutory requisites which must be demonstrated to justify the granting of a use variance are the showing of "special reasons" and proof of the negative criteria. A special reason is one which advances the purposes of zoning. Kohl v. Fair Lawn, 50 N.J. 268, 276 (1967). The purposes of land use regulation include promotion of safety and health, appropriate use of property and promotion of a desirable visual environment. N.J.S.A. 40:55D-2. Special reasons exist whenever a variance proposes to secure any of these goals, including promotion of the general welfare. Yahnel v. Jamesburg Bd. of Adj., 79 N.J. Super. 509, 517 (App.Div. 1963), certif. den. 41 N.J. 116 (1963). Moreover, "[b]ecause of the nature of the subject no precise formula is feasible and each case therefore must turn on its own circumstances. Kohl, above, 50 N.J. at 276. In Grundlehner v. Dangler, 29 N.J. 256 (1959), the court recognized that a variance to expand a nonconforming use does not impair the zone plan as much as a variance to create and permit a new use. As the court explained:
Since a variance may, upon a proper showing of special reasons within N.J.S.A. 40:55-39(d), be granted to a create a new nonconforming use in a *486 residential zone it may clearly be granted to enlarge a pre-existing nonconforming use; it is entirely evident that a limited extension of a pre-existing professional office, gasoline station, funeral home, shopping center or other business activity in a residential zone, will ordinarily be less likely to involve substantial impairment of the zoning plan than will the creation of a wholly new use of such nature. [at 269]
This is not to say that the existence of a nonconforming use in itself gives rise to special reasons to expand the use. Kohl v. Fair Lawn, above, 50 N.J. at 282. However, the trial judge properly recognized the court's scope of review is to determine whether the municipal authorities could reasonably conclude from the evidence presented that a special reason existed for granting the variance. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 285 (1965). The grant is presumed valid and may be upset only when the decision is arbitrary, unreasonable or capricious. He found that the governing body could reasonably conclude that the addition would create a safer and more aesthetically pleasing building and therefore proper special reasons existed for the grant of the variance. One of the purposes of the recently enacted Municipal Land Use Law is "to promote a desirable visual environment through creative development techniques and good civic design and arrangements." N.J.S.A 40:55D-2(i). It would thus appear that beautifying an area can be deemed a special reason justifying a variance to expand a nonconforming use. While it is true that in Kohl v. Fair Lawn, above, the court said:
We do not question the finding of the Board of Adjustment that the new construction would result in a more attractive plant than exists at present. While we do not decide whether esthetic considerations may provide a special reason for the grant of a variance in a proper case, they do not support this proposed construction of a half-million dollar expansion of an industrial complex in a residential zone. [50 N.J. at 277]
Kohl, however, involved a dairy which sought a variance to replace its 6,300 square foot building with a 35,000 square foot plant. Moreover, it was decided under the old statute which did not include aesthetic considerations as a purpose of zoning. N.J.S.A. 40:55-32. The new act differs in this respect, and it would appear that beautifying an area, in the context of this application, could be deemed a special reason justifying a variance to expand a nonconforming use.
*487 In addition to the consideration of aesthetics, it was also determined that the additional construction would make the property safer for children. There was testimony before the board of adjustment that the storage area presented a hazard to children tempted to play among the appliances. The governing body and the trial judge found that making the premises safer constitutes a special reason. To promote safety is one of the purposes of zoning, both under the old and new acts. N.J.S.A. 40:55D-2(b); N.J.S.A. 40:55-32. In Kramer v. Sea Girt, Bd. of Adj., above, 45 N.J. at 268, the court upheld the variance to permit the construction of a hotel in a residential zone. The hotel was to replace another hotel that existed on the premises as a nonconforming use. The governing body found several reasons for granting the variance, among them that the new hotel would be safer than the old hotel. The court held that it was appropriate for the municipality to take that into consideration. 45 N.J. at 292-293. We are satisfied that, under the circumstances of this case, promoting safety is a legitimate special reason for allowing the extension of the nonconforming use.
Plaintiff's last allegation of error is ambiguous. The point heading which reads, "[t]he scope of review of the trial court has yet to be judicially determined under the Municipal Land Use Law," appears to refer to the trial judge's standard of review. However, plaintiff's argument is directed to the standard of review of the governing body in considering the action of the board of adjustment, as well as the standard of review to be utilized by the trial judge. As we understand the argument, plaintiff contends that under the new Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., the governing body, in considering an appeal from the board of adjustment, may only determine whether the board of adjustment acted arbitrarily. In any event, plaintiff's position is without merit. With respect to the trial judge, whether the appeal comes to him directly from the board of adjustment or after review by the governing body, we are satisfied that the standard of review is as enunciated by Judge Lennox below. In prefacing his decision he said:

*488 ... It is axiomatic that the function of this Court is not to review the record and make independent findings of fact and conclusions of law on a de novo basis. Plaintiff is not entitled to a new trial on the record, but rather only to a determination as a matter of law on the record as to whether the Township Committee could reasonably have concluded from the evidence presented and under the applicable legal standards that the variance should be granted. Only in the event no such support appears in the record and that the action of the Township Committee can be said, on the basis of that record, to be arbitrary, capricious, or unreasonable, must this Court or indeed can this Court grant the relief sought by plaintiff.
We believe this to be an accurate statement of his function. Kramer v. Sea Girt Bd. of Adj., above, 45 N.J. at 296-297 (1965); Nigito v. Closter, 142 N.J. Super. 1, 9 (App.Div. 1976), certif. den. 74 N.J. 265 (1977).
Plaintiff's argument concerning the function of the governing body in considering the action of the board of adjustment does not help him. Although we see no statutory impediment to a de novo consideration by the governing body of the record presented to the board of adjustment, N.J.S.A. 40:55D-17(a), we need not decide that issue in disposing of this case. If we assume, without accepting, that the standard of review to be applied by the governing body is to evaluate whether the board's action was arbitrary, unreasonable and capricious, the action of the township committee of Westampton would still be correct. The board of adjustment in this case rendered a decision without making any findings of fact and without reason or reasons for its determination. The vote of the board of adjustment, although constituting a simple majority in favor of granting the variance, was in reality a denial of the application. As indicated above, the statute required five affirmative votes. The failure to obtain the statutory requirement was tantamount to a denial. Miller v. Boonton Tp. Bd. of Adj., 67 N.J. Super. 460, 469 (App. Div. 1961); Smith v. Madison Bd. of Adj., 59 N.J. Super. 553, 558-559 (App.Div. 1960), certif. den. sub nom. Smith v. Kirkpatrick, 32 N.J. 352 (1960). Consequently, the action of the board of adjustment denying the application without making any findings or giving any reasons was arbitrary. The governing body, in reviewing the evidence adduced before the board of adjustment and recognizing that the board gave no reasons for *489 its denial, was authorized to reverse the board's decision as indicated in N.J.S.A. 40:55D-17(d). The aforementioned statute provides that "[t]he governing body may reverse, remand or affirm, wholly or in part, or may modify the final decision of the planning board or board of adjustment, as the case may be." Thus, regardless of the standard of review, the governing body's action was correct.
Parenthetically, N.J.S.A. 40:55D-17(d) is a strong argument in favor of the right of the governing body to review the matter de novo on the record below. The language of the statute negates the suggestion that the governing body's scope of review was limited to a determination of whether the action of the board of adjustment was arbitrary, unreasonable or capricious. The options granted the governing body in the aforementioned statute are too far-ranging to suggest the narrow parameters of "arbitrary, unreasonable or capricious" when considering the scope of its review. The fact that the governing body is mandated to make its determination on the record presented to the board of adjustment, N.J.S.A. 40:55D-17(a), is not inconsistent. Its determination is to be made de novo on the record. Insofar as Evesham Tp. Zoning Bd. v. Evesham Tp., 169 N.J. Super. 460 (Law Div. 1979), is considered inconsistent with this opinion, it is disapproved.
Affirmed.
NOTES
[1] It is not disputed that five affirmative votes were required.