MICHELOTTI REALTY CO., INC.; ANDREW MULICK; AND ROBERT MULICK AND KATHLEEN MULICK, HIS WIFE, PLAINTIFFS-RESPONDENTS, v. ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF SADDLE BROOK AND GRIMALDI AND GRIMALDI, TRUSTEES, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Submitted October 12, 1983—Decided November 1, 1983.

Before Judges MICHELS and DREIER, JJ.

*Grimaldi & Grimaldi,* for appellants (*Stephen D. Grimaldi,* of counsel, and on the brief).

*Robert R. Guida,* for respondents.

DREIER, J.A.D.

Defendants, Grimaldi and Grimaldi, Trustees, (Grimaldi) appeal from the reversal by the Law Division of the grant of bulk variances and a site plan approval by the Saddle Brook Zoning Board of Adjustment. The trial court determined as a matter of law that the Board of Adjustment lacked the power to issue the variances and site plan approval under the Municipal Land Use Law, *N.J.S.A.* 40:55D–70 d. We disagree with this interpretation of the law, and therefore remand for consideration of the merits of the zoning appeal, which were not reached by the trial judge.

Grimaldi, the owner of Lot 3, Block 45 on the tax map of the Township of Saddle Brook, applied to the Board of Adjustment for a variance to erect a one-story, 6,300 square foot building for storing non-ferrous metal, with ten off-street parking spaces on this 10,000 square foot lot. The Board of Adjustment determined that a use variance was unnecessary, although the same had been applied for, but then retained jurisdiction and granted various bulk variances subject to conditions concerning front,

sideline and rear line setbacks, site plan approval and approval of other appropriate agencies and a prohibition against outside storage. On July 6, 1981, ten days after publication of the Board's final decision, plaintiffs (adjoining property owners) appealed to the mayor and council, and a month later filed a complaint in lieu of prerogative writ seeking to set aside the grant of the variance. While this appeal was pending, but prior to the pretrial conference, Grimaldi applied for a further variance concerning off-street parking, and in addition sought final site plan approval. On February 4, 1982, the Zoning Board granted Grimaldi's variance (nine off-street spaces rather than thirteen), and also gave Grimaldi preliminary site plan approval, subject to certain conditions. Thereafter, on April 1, 1982, the Board granted final site plan approval, whereupon plaintiffs amended their complaint before the Law Division to include a second count seeking reversal of the site plan approval.

The case was tried on June 15, 1982, and on June 30, 1982 the trial judge rendered his oral determination setting aside the Zoning Board's grant of the variance and site plan approval on the basis that application should have been made to the Planning Board in that the Board of Adjustment lacked jurisdiction.

The issues implicated in this case involve the basic structure of the variance process under the Municipal Land Use Law and present a case of first impression as to the grant of bulk variances and site plan approval by a Board of Adjustment. The trial court stated in its final judgment that:

> ... the variance application made by the defendant, Grimaldi & Grimaldi, Trustees was properly cognizable under *N.J.S.A.* 40:55D–70c and that said application, as determined by the Zoning Board of Adjustment of the Township of Saddle Brook, was not made pursuant to *N.J.S.A.* 40:55D–70d (Use Variances). The Court further found that pursuant to the applicable provisions of the Municipal Land Use Act, the Zoning Board of Adjustment of the Township of Saddle Brook did not have jurisdiction to hear the said application for variance and site plan approval, and that the application for variance ... and for site plan approval should properly have been made to the Planning Board of the Township of Saddle Brook.

The court thus determined that a bulk variance as opposed to a use variance was not properly cognizable by the Board of

Adjustment under *N.J.S.A.* 40:55D–70 d, but rather had to be heard by the Planning Board under *N.J.S.A.* 40:55D–70 c.

The language of *N.J.S.A.* 40:55D–70 d gives a board of adjustment the power to "[i]n particular cases and for special reasons, grant a variance to allow departure from regulations pursuant to article 8 of this act, *including, but not limited to,* allowing a structure or use in a district restricted against such structure or use . . . " [Emphasis added]. The language of this section, which expands the jurisdiction beyond the simple use variance previously permitted, was added by *L.*1979, *C.* 216 § 23, and that legislation was accompanied by a Statement which provided that subsection d was amended in order to "clarify that 'd' variances can be granted for bulk restrictions for the special reasons defined in case law even if the structure or use is permitted in the zoning district." The trial judge mistakenly interpreted the section as prohibiting bulk variances under subsection d.

As to the site plan approval, *N.J.S.A.* 40:55D–76 b states:

The board of adjustment shall have the power to grant to the same extent and subject to the same restrictions as the planning board . . . site plan approval pursuant to [40:55D–37 *et seq.*] . . . whenever the proposed development requires approval by the board of adjustment of a variance pursuant to [40:55D–70]. . . .

By allowing the Board of Adjustment to grant site plan approval—a power normally reserved for the Planning Board—when an application is properly before it under *N.J.S.A.* 40:55D–70 d, the statute simplified the problems facing an applicant seeking both a use or bulk variance and a site plan approval. A similar provision is contained in the act for subdivision applicants. The draftsmen also inserted parallel provisions granting to planning boards the right to grant bulk variances when reviewing applications for subdivisions, site plans or conditional uses. See *N.J.S.A.* 40:55D–60.

Thus, if an application before a planning board involves a request for a variance, or an application before a board of adjustment involves an application for a site plan or subdivision,

both applications may be heard by the same regulatory body. As was noted in *Amato v. Randolph Township Planning Board,* 188 *N.J.Super.* 439, 447 (App.Div.1982):

> Clearly, one of the basic reforms intended to be effected by the 1975 law was the elimination of the delays and inconsistencies in development application approvals resultant from a developer's need to submit different aspects of the same development plan successively to different municipal boards and agencies.

■ Our determination that the power existed to grant the bulk variances and site plan approval does not imply our substantive approval of the action taken by the Board of Adjustment. Such a review is the proper function of the Law Division. Although the premise clause of the trial judge's judgment only states the above quoted legal basis for his decision, in the second ordering paragraph of the judgment he also requires that "any resolutions made by the Planning Board of the Township of Saddle Brook state its findings of facts and conclusions of law." Apparently, this provision was added for the reason that there were insufficient findings of fact and conclusions of law showing the basis of the Board of Adjustment's grant of the variances and site plan approval. .

■ The determination by the Board of Adjustment whether Grimaldi presented a particular case where special reasons existed for the grant of the variance is to be reviewed by the Law Division. This is a case-by-case determination. As was noted in *Hudanich v. Avalon,* 183 *N.J.Super.* 244, 259 (Law Div.1981):

> ... Exactly what constitutes a special reason is not found in the above statute and thus resort must be made to case law. *Andrews v. Ocean Tp. Bd. of Adj.,* 30 *N.J.* 245, 251 (1959). Decisional law of New Jersey consistently dictates that since no precise formula is feasible for a 'special reason,' each case necessarily turns upon its own facts. *Kohl v. Fair Lawn,* 50 *N.J.* 268, 276 (1967). In turn, these facts may constitute a special reason if they are congruent with the purposes of the Land Use Act, which can be found in current form at *N.J.S.A.* 40:55D–2. *Kessler v. Bowker,* 174 *N.J.Super.* 478, 485 (App.Div.1979). *See, also, Yahnel v. Jamesburg Bd. of Adj.,* 79 *N.J.Super.* 509, 517 (App.Div.1963), certif. den. 41 *N.J.* 116 (1963); *Bern v. Fair Lawn,* 65 *N.J.Super.* 435, 446 (App.Div. 1961), which stand for the same proposition under the prior version of the Land Use Act at *N.J.S.A.* 40:55–32.

By our reversal of the judgment we in no way wish to imply that we find sufficient facts or conclusions stated by the Board

of Adjustment; only that we disagree with the legal conclusion of the trial judge. If upon remand the trial judge wishes to retain jurisdiction, and further remand the matter to the Board of Adjustment for a more complete statement of its findings of facts and legal conclusions, he may do so. If the record before the trial court is found to be insufficient, especially in light of the governing body's failure to hear the appeal that had initially been filed before it (and thus the same having been automatically affirmed pursuant to *N.J.S.A.* 40:55D–17 c), the Law Division, in fairness, might remand the case to the Board of Adjustment, retaining jurisdiction so that this attenuated review process may come to an end without the imposition of an intermediate appellate step to the governing body.

The judgment appealed from is Reversed and this matter is Remanded to the Law Division for further proceedings in conformity with this opinion. We do not retain jurisdiction.