214 N.J. Super. 82 (1986)
518 A.2d 503
LLOYD HENNINGSEN AND IRA AYERS, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF RANDOLPH, ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF RANDOLPH, RANDOLPH EQUITIES, A PARTNERSHIP, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1986.
Decided November 24, 1986.
*83 Before Judges FURMAN, DREIER and STERN.
Richard I. Clark argued the cause for appellants (Dolan & Clark, attorneys; William M. Cox and Richard I. Clark, on the brief).
John P. Jansen argued the cause for the respondent Township of Randolph (Villoresi & Jansen, attorneys; Paula J. DeBona and John P. Jansen, on the brief).
Martin Newmark argued the cause for the respondent Randolph Township Board of Adjustment (Broderick, Newmark, Grather & Aspero, attorneys; Alan J. Baldwin and Martin Newmark, on the brief).
Ronald F. Pitman argued the cause for the respondent Randolph Equities (James, Wyckoff, Vecchio & Pitman, attorneys; Richard L. Schneider and Ronald F. Pitman on the brief).
The opinion of the court was delivered by FURMAN, P.J.A.D.
*84 Defendant Board of Adjustment granted defendant Randolph Equities a use variance, N.J.S.A. 40:55D-70(d), for a two-story 17,718 square foot office building on two lots in a residential zone at the intersection of State Highway Route 10 and the Dover-Chester Road.
On appeal by nearby resident objectors, the Township Mayor and Council affirmed on the record before the Board of Adjustment. The objectors instituted this prerogative writ action before the appeal to the governing body was decided and subsequently amended their complaint to include a challenge to that decision on the grounds that it was arbitrary and capricious, barred by res judicata and tainted by conflict of interest of the Mayor and other members. The issue of conflict of interest was also raised on the original complaint to review the Board of Adjustment grant of approval, based upon the financial involvement in the project of the Board of Adjustment attorney, who disqualified himself. From judgment upholding the grant of the variance on the record before the Board of Adjustment, the objectors appeal. We are informed that construction has not proceeded pending appeal. We reverse.
The subject property is zoned for single-family residential use. A combined professional office or studio and single-family dwelling use is permitted if no more than one person not residing on the premises is employed there. Other permitted uses include farms, roadside stands selling farm and garden products, greenhouses, nurseries, golf courses and parks.
The two lots are part of a 23-lot residential subdivision approved some years ago. Single-family dwellings have been built on the other 21 lots, generally to the north and east of the subject property and fronting on Dover-Chester Road or connecting streets. Only one other lot in the subdivision, to the east of the subject property, has frontage on Route 10.
Except for the subject property, Route 10 is zoned at its intersection with Dover-Chester Road for regional business use. *85 That zone extends in a strip along Route 10 across from the subject property. The environs are otherwise zoned for residential use, along Route 10 to the west, along Dover-Chester Road and in residential enclaves to the north. Route 10 itself in the vicinity has experienced diversified commercial, office and educational development. A bank, a gasoline service station, a real estate office and the county college are nearby. Traffic is heavy on Route 10.
In granting the use variance to Randolph Equities, the Board of Adjustment concluded that a special reason existed for a use variance under N.J.S.A. 40:55D-70(d) and that the use variance could be granted without substantial detriment to the public good or substantial impairment of the intent and purpose of the zoning scheme. In our view, the conclusion that the so-called negative criteria were met was reasonably based in the record. We disagree that a special reason was established, as that prerequisite for a subsection (d) variance has been defined in the case law.
According to the Board of Adjustment, the present zoning has, for all reasonable purposes rendered the parcel "economically useless;" the proposed use would serve as an "excellent transition or buffer between the highway commercial applicants and the nearby residences;" it would "promote the statutory purposes of zoning, including promoting a desirable visual environment and providing sufficient space for appropriate commercial uses;" and the site is particularly well suited for the office use applied for. On appeal, the Mayor and Council reached no separate findings and conclusions.
The trial judge, in upholding the grant of the variance, sustained the Board of Adjustment's conclusions as reasonable on the record, in particular that the subject property was not "realistically developable" for residential use and that an office use would fit in and relate well to the "economic realities of development along Route 10 and to the need for some kind of *86 buffering and protection" for the residential properties to the north.
Randolph Equities' proposed office use is not a use like a school or a hospital inherently promoting the general welfare and, hence, per se a special reason for a N.J.S.A. 40:55D-70(d) variance, see Black v. Montclair, 34 N.J. 105 (1961) and Andrews v. Ocean Twp. Board of Adjustment, 30 N.J. 245 (1959). According to Kohl v. Mayor and Council of Fair Lawn, 50 N.J. 268, 279 (1967), a use other than one inherently promoting the general welfare may provide a special reason for a subsection (d) variance if the use serves the general welfare because it is particularly fitted to the location for which the variance is sought. We view the requisite showing as dual: a use promoting the public health, safety or welfare and particular suitability of the proposed site.
An applicant to qualify for a subsection (d) variance need not prove a zoning burden, that is, inutility of the premises for any use permitted under the zoning ordinance, Black and Andrews, supra. If required to prove such a zoning burden, Randolph Equities failed in its proof: no testimony or evidence in the record precluded reasonable suitability of the subject parcel for other permitted uses, such as professional office combined with dwelling, greenhouse, nursery or roadside farm and garden stand.
Several prior decisions have upheld or ordered use variances under N.J.S.A. 40:55D-70(d) or its predecessor statute other than for uses such as schools or hospitals inherently promoting the general welfare: Kramer v. Bd. of Adust., Sea Girt, 45 N.J. 268 (1965) (fireproof hotel to replace dangerous structure); Ward v. Scott, 16 N.J. 16 (1954) (supermarket in developing area); Kessler v. Bowker, 174 N.J. Super. 478 (App.Div. 1979) certif. den. 85 N.J. 99 (1980) (expansion of nonconforming retail appliance shop making the property safer for children by removing an attractive nuisance); Scheff v. Township of Maple Shade, 149 N.J. Super. 448 (App.Div. 1977), certif. den. 75 N.J. *87 13 (1977) (liquid propane gas storage facility serving an area); Yahnel v. Bd. of Adjust. of Jamesburg, 79 N.J. Super. 509 (App.Div. 1963) certif. den. 41 N.J. 116 (1963) (building to house telephone service equipment); Hudanich v. Avalon, 183 N.J. Super. 244 (Law Div. 1981) (seven stores on a pier to replace a structure declared unsafe); Rolfe v. Borough of Emerson, 141 N.J. Super. 341 (Law Div. 1976) (school bus garage facility); Brunetti v. Mayor, Coun., Tp. of Madison, 130 N.J. Super. 164 (Law Div. 1974) (moderate income multi-family housing in a municipality with a need for such housing); and Wickatunk Village, Inc. v. Tp. of Marlboro, 118 N.J. Super. 445 (Ch.Div. 1972) (private sewage treatment plant for mobile home park).
Although it has been said that a special reason is one which advances the purposes of zoning, Kohl, supra 50 N.J. at 276, Kessler, supra 174 N.J. Super. at 485, no reported decision has upheld or ordered a use variance for any purpose of zoning as set forth in N.J.S.A. 40:55D-2 or its predecessor statute, except promotion of public health, safety or general welfare or securing safety from fire or other danger. We do not preclude the possibility that in an appropriate case a special reason for a use variance may be established based upon one or more of the other zoning purposes set forth in N.J.S.A. 40:55D-2. On the record this is not such a case.
The common rationale of the reported decisions is that a special reason for a use variance must promote public health or safety or otherwise serve a public need at an advantageous site. On this record, the suitability for office use of the subject property, on a busy highway and with access from a less traveled intersecting road, is not seriously challenged. But the record is devoid of any finding of a need for an office building or office space in that location or anywhere else in the township or area. The proposed use would be a commercial enterprise for profit, not per se contributing to the public health or safety or otherwise serving a public need.
*88 The special reasons advanced by the Board of Adjustment are inadequate as a matter of law. Accordingly, the presumption of validity of municipal factfinding decisions is inapplicable, Kramer, supra 45 N.J. at 296. Multiple other uses, both permitted and not permitted in this residential zone, would, like the proposed office use, serve as a buffer to the nearby residences and not be aesthetically unsightly. Those factors do not qualify by themselves as a special reason or reasons entitling an applicant to a subsection (d) variance; if they did, zoning use restrictions would be substantially nullified. In Kohl, 50 N.J. at 277, the Supreme Court stated:
To justify the extensive expansion contemplated here by the increase in attractiveness of the property would open the way for any land to be used for any purpose, so long as the negative criteria are satisfied, if the facilities housing the use make the premises prettier than formerly. Such result would be contrary to established fundamentals of sound zoning.
In Mahler v. Borough of Fair Lawn, 94 N.J. Super. 173, 184 (App.Div. 1967), aff'd o.b. 55 N.J. 1 (1969), we commented:
It is obvious that almost all lawful uses of property in our society serve in greater or lesser degree the promotion of the general welfare. If the social benefits of any individual use were, on the basis of the general welfare concept, to be regarded as an adequate special reason for a (d) use variance, we would have, in effect, the untoward and clearly unintended consequence that variances could be awarded indiscriminately merely because they did not offend the negative criteria of the statute.
That a parcel of land is zoned so as to preclude its most profitable use or even any economically feasible use has not been held in any reported decision to justify a subsection (d) variance; alleviation of economic hardship is not a purpose of zoning or by itself a special reason for a use variance. Cerdel Const. Co., Inc. v. East Hanover Tp., 86 N.J. 303, 307 (1981); Degnan v. Monetti, 210 N.J. Super. 174, 184 (App.Div. 1986); Bern v. Fair Lawn, 65 N.J. Super. 435, 450 (App.Div. 1961).
The power to grant use variances should not be exercised solely to correct improper zoning. A property owner whose property is zoned into economic inutility has other available remedies: attacking the constitutionality of the zoning ordinance as applied to his property or inverse condemnation. A M *89 G Associates v. Tp. of Springfield, 65 N.J. 101, 111-112 (1974); Sheerr v. Evesham Tp., 184 N.J. Super. 11, 33 (Law Div. 1982).
Moreover, Randolph Equities acquired the subject property with its principals' full knowledge of the applicable zoning limitation against commercial use. Even if economic hardship were available as a special reason for a use variance, Randolph Equities should be barred because its economic hardship was self-induced. Wilson v. Mountainside, 42 N.J. 426, 452 (1964); Degnan, supra; Geo. F. Barnes Land Corp. v. Wyckoff Tp. Bd. of Adj., 174 N.J. Super. 301 (App.Div. 1980);
Because we reverse for insufficiency of Randolph Equities' showing of a special reason for a use variance, we need not and do not decide its alternative arguments for reversal: res judicata and conflict of interest.
We reverse.
DREIER, J.A.D. (concurring in part and dissenting in part).
I take no issue with the facts and history of the case developed in Judge Furman's comprehensive opinion. However, I am constrained to disagree with his exposition of the law concerning the availability of economic hardship as a special reason for a variance under N.J.S.A. 40:55D-70d.
The Supreme Court in Kohl v. Fair Lawn, 50 N.J. 268 (1967) explained the standards for a "special reasons" variance under subsection d:
In the first opinion in Ward v. Scott, 11 N.J. 117 (1952), this Court rejected the contention that subsection (d) of the statute was unconstitutional for want of a sufficient standard for the term `special reasons.' We held that this language gained validating content from the purposes of zoning set forth in N.J.S.A. 40:55-32 [now N.J.S.A. 40:55D-2, in an expanded form]. No more specific standards for special reasons have been given by our courts beyond those general standards of Section 32. Because of the nature of the subject, no precise formula is feasible and each case therefore must turn on its own circumstances. Andrews, supra [Andrews v. Ocean Tp. Bd. of Adjustment, 30 N.J. 245 (1959)] at 251. However, the lack of a precise formula does not mean that carte blanche has been given to local governing bodies in finding special reasons for the grant of variances. Otherwise, variances could be awarded *90 indiscriminately merely because they do not offend the negative criteria of the statute. [at 276]
See also Michelotti Realty v. Saddle Brook Tp. Zoning Bd., 191 N.J. Super. 568, 572 (App.Div. 1983), quoting from Hudanich v. Avalon, 183 N.J. Super. 244, 259 (Law Div. 1981). As Judge Conford stated in Bern v. Fair Lawn, 65 N.J. Super. 435, 446 (App.Div. 1961):
Adequate special reasons are any which, taken as a whole, are founded affirmatively in one or more of the zoning objectives set forth in R.S. 40:55-32. .. . The Andrews opinion, supra, expressly stated that the range of adequate special reasons under (d) could not be simply formulated (30 N.J. at p. 251), and held that the promotion of the welfare of the public at large was an adequate special reason.... Other affirmative zoning benefits from the variance were also cited (30 N.J. at p. 250).... Neither these cases nor any other we know of can be read to hold that promotion of the general welfare of the public at large is the only permissible reason for granting a (d) variance. There are a number of other zoning criteria in R.S. 40:55-32 which may properly be resorted to for a (d) variance. Among the most obvious are appropriate land use, and relief from conformance with such uses of property to which the district is restricted by the ordinance, as constitute an undue burden on the particular parcel not common to the entire district (`Conserving the value of property and encouraging the most appropriate use of land throughout such municipality,' R.S. 40:55-32).
I see no foundation in our decisional or statutory law to limit the bases for a "special reason" to those set forth in N.J.S.A. 40:55D-2a, when the Legislature has stated in paragraphs b through n of that section additional valid considerations for zoning.
The considerations for a variance relief from the zoning ordinance should be coextensive with the factors supporting the ordinance itself. A municipal land use ordinance must establish separate zones in accordance with the mandate of N.J.S.A. 40:55D-62:
The zoning ordinance shall be drawn with reasonable consideration to the character of each district and its peculiar suitability for particular uses and to encourage the most appropriate use of land. The regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of building or other structures or use of land.
Spot zoning has been said to be prohibited. Taxpayers Ass'n of Weymouth Tp. Inc. v. Weymouth Tp., 80 N.J. 6, 18 (1976), cert. den. sub. nom. Feldman v. Weymouth Tp., 430 U.S. 977, 97 *91 S.Ct. 1672, 52 L.Ed.2d 373 (1977). Palisades Properties Inc. v. Brunetti, 44 N.J. 117, 134 (1965). Nevertheless, as Judge Michels explained in Riggs v. Long Beach Tp., 212 N.J. Super. 69, 81-82 (App.Div. 1986), spot zoning is improper only where it unjustifiably singles out a small area for disparate treatment. Where justified, even a small area may be the subject of different zoning treatment in conformity with a comprehensive zoning plan. We recognize, however, that zoning boards or governing bodies might fail to recognize the particular circumstances that could have justified a different treatment for a particular lot. And when, for some peculiarity relating to the property, a particular lot or small group of lots cannot or should not be developed in accordance with the uses assigned to a particular district, a variance is authorized. Ward v. Scott, 16 N.J. 16, 22 (1954). In this respect a valid purpose of zoning is served, since instead of vacant land, there will be an appropriate use of the land to benefit the citizenry, an authorized zoning consideration under N.J.S.A. 40:55D-2g.
As noted in Charlie Brown of Chatham v. Board of Adjustment, 202 N.J. Super. 312, 329 (App.Div. 1985):
Where the use is not of the type which of itself provides special reasons, such as a school or hospital, there must be a finding that the general welfare is served because the use is peculiarly fit for the particular location for which the variance is sought ... This is so because nearly all lawful uses of the property promote, in greater or lesser degree, the general welfare.
A similar expression may be found in Kohl v. Fair Lawn, supra, 50 N.J. at 279-80. If, however, we define "general welfare" as encompassing all of the purposes of zoning set forth in N.J.S.A. 40:55D-2, we avoid the specific issue, since this general definition would include the specific "general welfare" provision set forth in paragraph a of that section. I would, therefore, confine the "general welfare" terminology to its "public or quasi-public use" meaning.
Our courts have not been reticent to recognize other bases for "special reasons." For example, in Kessler v. Bowker, 174 N.J. Super. 478, 486 (App.Div. 1979), certif. den. 85 N.J. 99 (1980) we stated:

*92 One of the purposes of the recently enacted Municipal Land Use Law is `to promote a desirable visual environment through creative development techniques and good civic design and arrangements. N.J.S.A. 40:55D-2(i). It would thus appear that beautifying an area can be deemed a special reason justifying a variance to expand a nonconforming use.[1]
Judge Conford's statement of the broad bases of special reasons in Bern v. Fair Lawn, quoted above, has never been repudiated, and, in fact, was reiterated in Mahler v. Borough of Fair Lawn, 94 N.J. Super. 173, 183-84 (App.Div. 1967), aff'd 55 N.J. 1 (1969), cited with approval in Kohl, supra, 50 N.J. at 280.
If we are free to base a special reason variance upon zoning considerations other than general welfare, we must specifically consider whether economic hardship constitutes a valid special reason. In a situation where a particular parcel may not be economically developed for its zoned use, but can be developed for another use satisfying the negative criteria of the zoning ordinance, thus preventing the property from being zoned into idleness, I disagree that the owner is limited to an attack upon the constitutionality of the zoning ordinance or a resort to a claim of inverse condemnation. I can envision a situation where by reason of some condition of the land, such as an adjacent highway or other impediment to residential development, a single lot within a residential zone may not economically be developed residentially, yet the condition prohibiting such residential use would not prohibit commercial development. I *93 do not, however, believe that the property here under consideration has yet been shown to satisfy this criterion.
If the economic hardship is that the owner paid a speculative price hoping that a variance could be granted, but that the zoned use could be accomplished, then the economic hardship should be deemed to be self-imposed, and insufficient to justify a variance. See Wilson v. Mountainside, 42 N.J. 426, 452-53 (1964); and cf. Commons v. Westwood Zoning Bd. of Adjustment, 81 N.J. 597, 606 (1980), and Ardolino v. Florham Park Bd. of Adjustment, 24 N.J. 94, 106 (1957), involving "c" variances. The discussion in Wilson, although the court there denied the variance on the grounds of economic hardship, demonstrates that in the proper case, economic hardship may be a basis for a "d" variance. Justice Hall stated:
The claim is really one of inability to make as much money as if commercial development were permitted, for the proofs did not sufficiently show that development costs would be excessively high on a competitive basis or that houses which might be built on the tract could not be sold at some profit. It is fundamental that mere economic hardship of these limited dimensions is not a sufficient special reason to ground a variance. [42 N.J. at 451; emphasis supplied].
If economic hardship per se were an invalid basis for the granting of a variance, this discussion would have been unnecessary; the distinction made by Justice Hall would have been superfluous.
The fact that plaintiffs purchased the property, knowing that a residential use was unlikely, does not in itself make their alleged economic hardship "self imposed." The Supreme Court in Wilson v. Mountainside, supra, 42 N.J. at 452-53, clearly stated "that if a prior owner would be entitled to such relief, that right is not lost to a purchaser simply because he bought with knowledge of the zoning regulation involved." This situation is not within the realm of the self-created hardship that will generally bar relief. 42 N.J. at 452.
It should be clear that by finding that an economic hardship is a proper basis for a variance, I do not subscribe to the view that the owner is entitled to variance merely to enjoy the most *94 profitable use of his property. Such a principle is against established law. Cerdel Const. Co. Inc. v. East Hanover Tp., 86 N.J. 303, 307 (1981); Bern v. Fair Lawn, supra, 65 N.J. Super. at 450. I do not, however, read these cases as precluding appropriate considerations of economic hardship as a special reason. As the Supreme Court stated in AMG Associates v. Tp. of Springfield, 65 N.J. 101, 109 n. 3 (1974):
Ordinarily where an owner claims a zoning ordinance use provision is invalid as applied to one relatively small piece of land by reason of substantial hardship, such as here, unusability for any permitted purpose, relief should first be sought by way of variance under N.J.S.A. 40:55-39(d), for in such situations the local administrative agencies can generally adequately deal with the problem. A finding of such undue hardship is not only a sufficient special reason for a use variance, but usually mandates that result.
On the record before us, I agree with Judge Furman that the trial judge made findings insufficient to support the grant of the variance. The trial judge limited his conclusion to the fact that the property was not "realistically developable" for the permitted residential use. The zoning ordinance also permitted the combined professional office, or studio and single-family dwelling, and other uses noted by Judge Furman. From the time of the original subdivision the property had never been marketed by the original or present owners for residential use, and the owner's expert testified that given the presence of the highway the property could not economically be developed solely for residential use. No such testimony was advanced concerning the other permitted uses. The matter should be remanded for expansion of the record and reconsideration concerning the practicability of development for these other permitted uses.
With regard to the conflict of interest questions raised below, I would remand the matter for further consideration in accordance with Judge Brody's recent opinion in McVoy v. Montclair Bd. of Adjustment, 213 N.J. Super. 109 (App.Div. 1986). I believe that sufficient guidelines are set forth there to enable the Board of Adjustment and governing body to avoid further problems.
*95 I concur in the reversal of the grant of the variance, but dissent from the dismissal. I would remand for further consideration in accordance with this opinion.
NOTES
[1] Aesthetics, however, may not be reduced to mere whim or subjective personal taste that would "make the premises prettier than formerly." Kohl v. Fair Lawn, supra, 50 N.J. at 277. But the question left open in Kohl v. Fair Lawn, is whether objective aesthetic considerations could provide a special reason for a grant of a variance in a proper case. Ibid. This question should be deemed settled by the revised provisions of the Municipal Land Use law, N.J.S.A. 40:55D-2i. Kessler v. Bowker, supra, 174 N.J. Super. at 486. What is important, however, is to note that the Supreme Court in Kohl did not state that under no circumstances may any consideration other than the public, health, safety or general welfare provide a basis for a special reason. The opinion questioned the point of aesthetics because formerly it was not explicitly mentioned as one of the purposes of zoning in N.J.S.A. 40:55-32.