639 A.2d 752

GEORGE M. DILTS AND JUDITH S. DILTS, PLAINTIFFS, v. FRANKLIN TOWNSHIP PLANNING BOARD, DEFENDANT.

Superior Court of New Jersey
Law Division Hunterdon County

Decided February 5, 1993.

*Robert A. Ballard, Jr.,* for plaintiffs.

*William J. Caldwell,* for defendant (*Carter, Van Rensselaer & Caldwell,* attorneys).

HERR, J.S.C.

This matter comes before the court by way of complaint in lieu of prerogative writ to review the Franklin Township Planning Board's denial of plaintiff's application for farmland division of preserved farmland.

Plaintiffs, George and Judith Dilts, are the owners of 150 acres of land located on Quakertown Road in Franklin Township, Hunterdon County. The Franklin Township official tax map designates the property as block 36, lot 16. An adjoining tract of land, block 36, lot 18, owned by Herman and Patricia Panacek, consists of thirty-two acres. Both lots 16 and 18 are subject to deed restrictions set forth in deeds of easement under state- and municipally-approved farmland preservation programs, specifically in accordance with *N.J.A.C.* 2:76–3.12. The Dilts deed of easement provides, among other enumerated provisions, that the premises shall be retained for agricultural use, that no subdivision of the property shall occur without State Agricultural Develop-

ment Committee and grantee (Hunterdon County Agricultural Development Board) approval, and that (§ 15) the easement imposes no obligations or restrictions on grantors except as specified in the deed.

The deed of easement was entered into between the grantors/landowners, Dilts, and the grantee, Hunterdon County Agricultural Development Board (HCADB), and the committee, the State Agricultural Development Committee (SADC), on May 22, 1989, and recorded in deed book 1026 at page 270. Recorded simultaneously with the deed of easement was a municipally-approved farmland preservation program agreement (hereinafter "Agreement") between George and Judith Dilts ("grantors"), HCADB ("grantee"), and the Township of Franklin ("governing body"). This agreement enumerates nine benefits granted to the grantors by the grantee and the governing body in consideration for the grantors' "entering into a municipally approved farmland preservation program and for retaining said premises in agricultural use and production for the period herein stated [eight years].... " The agreement placed no obligations on grantors except those contained in the deed of easement. Included as enumerated benefits in the agreement are:

(4) protections for eleven (11) years ... against a municipality altering its zoning ordinance such that it ... has the practical effect of exclusive agricultural zoning.

> .   .   .   .   .   .   .   .

(6) ... an irrefutable presumption that no agricultural operation, activity or structure which conforms to NJAC 2:76–2 (and is not a direct threat to public health and safety) ... shall constitute a public or private nuisance.... Grantee in accordance with provisions of NJAC 4:1C–26 shall act as an informal mediator involving disputes which may arise between the agricultural operation or activity and any other person(s).

. . . .

(9) Additional benefits as may be made available from time to time through amendments to NJSA 4C:1C–11, et seq., ... and all other pertinent State, County and municipal laws, rules or policies.

The agreement specifically stated it is "binding upon the Grantors, Grantee and Governing Body and shall run with the land."

In October 1991, plaintiffs petitioned the HCADB for "division of deed-restricted farmland" in order to divide off thirty acres from their 150–acre lot 16. Their purpose was to sell it to a third party who desired to combine it with the thirty-two acre lot 18 of the Panaceks and establish a nursery on the new sixty-two-acre tract. On November 25, 1991, the HCADB by resolution conditionally approved the creation of the sixty-two acre farm from the Dilts' thirty acres and the Panaceks' lot 18 as follows:

> NOW, THEREFORE, BE IT RESOLVED, that the Hunterdon County Agricultural Development Board approve the Application to create a 62 acre farm, subject to the following conditions:
>
> 1. The 30 and 32 acre parcels shall be merged into one tax lot.
>
> 2. The merger of the 30 and 32 parcels shall be approved by the Franklin Township Planning Board through a formal subdivision or a written indication by the Planning Board that subdivision approval is not necessary.
>
> 3. One Residual Dwelling Site Opportunity shall be allocated to the 62 acre parcel which must be utilized on the front portion of the parcel, presently known as Block 36, Lot 18. This allocation may be made from either the Panacek or the Dilts property at the Applicant's election. The Applicant shall notify the Board of the exact RDSO allocation within nine months from the date of this resolution.
>
> The Applicants are hereby advised that it is their responsibility to secure the approval of the State Agriculture Development Committee and the Franklin Township Planning Board for the final approval of this Application.

The SADC approved the Dilts' "Request for Division of Permanently Preserved Farmland" by resolution # FY92R12(1) on December 19, 1991, as follows:

> NOW, THEREFORE, BE IT RESOLVED that the SADC approves the proposed division of Block 35, Lot 16 consisting of approximately 30 acres subject to the following:
>
> 1. SADC approval of the division of approximately 32 acres from the Premises on the Panacek farm; and
>
> 2. The 30 acre Dilts farm and 32 acre Panacek farm shall be merged into one 62 acre farm; and
>
> 3. The SADC's approval of the division is not transferable; and
>
> 4. The Diltses are responsible for obtaining any municipal approvals associated with the division of the Premises and/or reconsolidation of farms.

Thereafter, plaintiffs submitted a written request to defendant Planning Board for agricultural division of the thirty acres from their 150 acres in lot 16 in order to merge it with the Panaceks' thirty-two-acre lot 18. On or about January 14, 1992, plaintiffs'

application was returned by the Planning Board as incomplete. They re-submitted their application in the manner requested by defendant Planning Board on or about January 15, 1992, together with the requested $100 application fee and $1,600 escrow fee, but under protest that the fees were inappropriate to this application. Defendant Planning Board referred the application to the Subdivision Review Committee on February 12, 1992. One week later, on February 19, 1992, the committee certified the application as complete and transferred it back to the defendant Planning Board for a public hearing.

A public hearing was held on March 11, 1992. Plaintiffs presented testimony, and comments were solicited from members of the community. Defendant Planning Board unanimously denied the application and adopted a resolution memorializing the action. It found:

1. [That] ... NJAC 2:76–6.2 which indicates that a division of farmland shall be for agricultural purpose and must result in agriculturally viable parcels ... is a different, and higher standard, than [that standard] imposed by NJSA 40:55D–7.

2. ... [The] application violates the County Agricultural Development Board policy of preserving large, exceptional farms ... [and] that by separating the parcels now, it would be difficult to reassemble them in the future ... that the township needed additional information such as a new farm plan for the remaining lands and a new business plan for the viability of the proposed farming operation [and that] ... they were concerned that there was no definition of "agriculturally viable parcel."

It concluded that plaintiffs herein did not meet the burden of proving "agricultural viability" for the proposed new sixty-two-acre parcel nor for the remaining lands of plaintiffs for the following reasons:

(a) No expert testimony was presented on the issue of viability.

(b) and (d) The contract purchaser of the sixty-two-acre parcel was not available to testify and thus denied the Board the opportunity to assess the likelihood of his success in maintaining the agricultural viability of the land he was purchasing.

(c) Mr. Panacek was the only witness regarding viability and he did not profess to have any experience or knowledge concerning agricultural viability.

(e) There was no testimony that growing exotic trees was viable on the sixty-two-acre tract.

(f) While the 32–acre Panacek tract is a separate lot, it is part of a 400–acre group of agriculturally-preserved lands under common ownership and use, and there

was no testimony that the 32 acres was ever an agriculturally viable tract by itself. "The applicants offered no testimony that the proposed sixty-two acre parcel would have qualify [sic] for separate farmland preservation funds."

(g) The intent and purpose of the Farmland Preservation Program (FPP) is to encourage aggregation and retention of large, existing farms "and not to create small tracts of land under unproved agricultural viability."

(h) The board is "not bound by the findings of fact and the conclusions drawn" by the HCADB and the SADC and it has concurrent jurisdiction to review the application, apply the same standards and to reach a different conclusion.

(i) A residual dwelling site opportunity (RDSO) allocated to a sixty-two-acre tract appears contrary to the interest and purpose of the FPP and long-term agricultural viability.

(j) The proposed division and merger is principally for the owners' economic gain and unrelated to the intent and purpose of the FPP.

(k) "[T]he testimony leaves many questions unanswered about the intent and purpose of the FPP...."

(l) Essentially the same as (i) above.

(m) The HCADB approval of the division of the thirty acres contingent upon adding the 32 acres from Panacek suggests the 30 acres was not agriculturally viable and that "agricultural viability as to the 62 acres" should be the primary consideration in reviewing the current application.

(n) Same as 1 and 2 in the Planning Board's resolution, quoted above.

A review of the relevant legislation, together with the undisputed background facts, sets the stage for resolving whether Franklin Township rightly denied plaintiffs' application.

Plaintiffs, in 1989, voluntarily enrolled their land under a municipally-approved farmland preservation program in accordance with the Agriculture Retention and Development Act (ARDA), *N.J.S.A.* 4:1C–11, as implemented by *N.J.A.C.* 2:76–3.1 to –3.13. The New Jersey Legislature set forth the purpose of the ARDA in *N.J.S.A.* 4:1C–12 as follows:

a. The strengthening of the agricultural industry and the preservation of farmland are important to the present and future economy of the State and the welfare of the citizens of the State, and that the Legislature and the people have demonstrated recognition of this fact through their approval of the "Farmland Preservation Bond Act," of 1981 ...;

b. All State departments and agencies thereof should encourage the maintenance of agricultural production and a positive agricultural business climate;

c. It is necessary to authorize the establishment of State and county organizations to coordinate the development of farmland preservation programs within identified areas where agriculture will be presumed the first priority use of the land and

where certain financial, administrative and regulatory benefits will be made available to those landowners who choose to participate, all as hereinafter provided.

The ARDA is the enabling legislation for the establishment of county, state and local development boards. These boards are to facilitate the "longterm preservation of significant masses of reasonably contiguous agricultural land ... and the maintenance and support of increased agricultural production as the first priority use of that land." *N.J.S.A.* 4:1C–13(h).

*N.J.S.A.* 4:1C–20 and *N.J.A.C.* 2:76–3.1 to –3.13 set forth the procedure by which a landowner enters his or her property into the farmland preservation program. Essentially, the legislative scheme requires that one or more landowners petition the county agricultural development board for permission to enter the program. If the county board concludes, after conducting an investigation, that the land complies with the eligibility criteria within the ARDA and administrative code, the county will forward a copy of the petition to (1) the county planning board, (2) the governing body of any municipality wherein the proposed municipally-approved program is located, and (3) the state agriculture board. *N.J.S.A.* 4:1C–21; *N.J.S.A.* 4:1C–13(a); *N.J.A.C.* 2:76–4.4. When all boards are satisfied that the land in question meets the eligibility criteria, it is accepted into the program by formal "approval of petition agreement" between the municipal governing body, the county and the landowner. *N.J.A.C.* 2:76–4.5(a). The county board is free to establish more stringent deed restrictions in order to recognize local conditions; however, a liberal construction is utilized to further the purpose of the ARDA. *N.J.A.C.* 2:76–4.5(b) and (c). In the approval of the Dilts property, as is apparent in the municipally approved farmland preservation program agreement and the deed of easement filed with the Hunterdon County Clerk, as discussed above, there were no additional restrictions.

Under the Municipal Land Use Act (MLUA), *N.J.S.A.* 40:55D, local planning boards are vested with the authority to control subdivision and site plan reviews. *N.J.S.A.* 40:55D–25. The definitional section of this act defines a subdivision as:

the division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale or development. The following shall not be considered subdivisions within the meaning of this act, if no new streets are created: (1) divisions of land found by the planning board or subdivision committee thereof appointed by the chairman to be for agricultural purposes where all resulting parcels are 5 acres or larger in size.

[*N.J.S.A.* 40:55D–7.]

Plaintiffs contend that the defendant was required to approve their subdivision request because under *N.J.S.A.* 40:55D–7 any tract of land fitting within "agricultural tract exception" is beyond the jurisdiction of the local board. Plaintiffs contend that their application complied with the statute because they produced evidence at the hearing that proved that the farmland was to be used for agricultural purposes and that defendant Planning Board was required to defer to the HCADB and the SADC as to their findings that the division was for agricultural purposes and was agriculturally viable. Therefore, the municipal board was required to approve their application.

Defendants reply that: first, they are solely responsible for subdivision approval pursuant to *N.J.S.A.* 40:55D–25; second, plaintiffs failed to produce evidence at the hearing sufficient to justify a finding of agricultural viability; and lastly, under the legislative scheme of the ARDA and by the express instruction pursuant to the HCADB resolution, the municipal board must conduct an independent review of plaintiffs' application.

I find that the Franklin Township Planning Board's role in plaintiffs' application is limited by *N.J.S.A.* 40:55D–7 since there is no other grant of authority to the Planning Board in *N.J.S.A.* 4:1C–1 to –48, *N.J.A.C.* 2:76–3.1 to –3.13, or in the agreement or deed of easement.

The Legislature authorized "State and county organizations to coordinate the development of farmland preservation programs...." *N.J.S.A.* 4:1C–12(c). While municipalities are encourage to approve local programs (*N.J.S.A.* 4:1C–12(h)), upon the filing of a petition by a landowner seeking the establishment of a municipal program, the municipalities' roles are limited to adopt-

ing or rejecting the petition. If the governing body proposes modifications, the landowner may request mediation first by the county board and then by the state committee (*N.J.S.A.* 4:1C–21(h)).

The role of the municipality is to encourage farmland preservation and that role could not be more clearly evident than in the agreement of May 22, 1989, entered by the Township of Franklin with the Diltses and the HCADB. This document lists nine benefits conferred on the grantors "(i)n return for entering into a municipally approved farmland preservation program . . . and complying with *N.J.S.A.* 4:1C–11 et seq. . . . and *N.J.A.C.* 2:76–4.5 . . ." along with "grant(ing) the Committee the first right and option to purchase the premises in fee simple absolute in accordance with the provisions of *N.J.S.A.* 4:1C–1 et seq." and "(any additional deed restrictions that have received Grantor, Grantee and State Agricultural Development Committee approval shall be attached hereto as Schedule B.)" There was no Schedule B attached. Neither did the deed of easement take away rights of the grantors to have the property divided or impose any municipal oversight to division or sale by Dilts beyond that in *N.J.S.A.* 40:55D–7. In fact, paragraph 15 explicitly states there are no restrictions imposed by the agricultural retention easement "except as specifically set forth in the easement."

The deed of easement specifically addresses subdivision of land as follows at page 4, paragraph 13:

> The land and its buildings may be sold collectively or individually for continued agricultural uses defined in Section 2 of this easement. However, no subdivision of the land shall be permitted without the joint approval in writing of the Grantee and the Committee. . . . Subdivision means any division of the Premises, for any purpose, subsequent to the effective date of this easement.

This paragraph does not require approval of the municipal governing body. The references to "Grantee" and "Committee" refer to the HCADB and the SDAC, but defendants argue that use of the word "subdivision" in this paragraph of the deed of easement and definition of it as any division of preserved farmland requires formal subdivision approval, thus overriding the express language

in *N.J.S.A.* 40:55D–7. To require formal subdivision approval with the attendant added costs under the farmland preservation act, where none was required under the MLUA, is contradictory to the intent to encourage agriculture and its economic viability as set forth in various sections of Title 4 of the New Jersey statutes:

> Several factors have combined to create a situation wherein the regulations of various State agencies and the ordinances of individual municipalities may unnecessarily constrain essential farm practices; [*N.J.S.A.* 4:1C–2(b)]

> All State departments and agencies thereof should encourage the maintenance of agricultural production and a positive agricultural business climate; [*N.J.S.A.* 4:1C–2(d)]

> It is the express intention of this act to establish as the policy of this State the protection of commercial farm operations from nuisance action, where recognized methods and techniques of agricultural production are applied, while, at the same time, acknowledging the need to provide a proper balance among the varied and sometimes conflicting interests of all lawful activities in New Jersey. [*N.J.S.A.* 4:1C–2(e)]

> "Commercial farm" means any place producing agricultural or horticultural products worth $2,500.00 or more annually; [*N.J.S.A.* 4:1C–3(a)]

> The [state agriculture development] committee shall:

>> (a) Establish guidelines and adopt criteria for identification of agricultural lands suitable for inclusion in agricultural development areas and farmland preservation programs to be developed and adopted by a board applying for moneys from the fund;

> . . . .

>> (f) Generally act as an advocate for and promote the interests of productive agriculture and farmland retention within the administrative processes of State government. [*N.J.S.A.* 4:1C–7]

> Every [county agriculture development] board shall ... have as their principal purpose the long-term encouragement of the agricultural business climate.... [and] review and approve, conditionally approve or disapprove petitions for the formation of a municipally approved program or other farmland preservation programs, and monitor the operations thereof; ... [*N.J.S.A.* 4:1C–15]

> The [state agriculture development] committee shall adopt rules and regulations necessary to carry out the purposes of this ... [farmland preservation] act.... [*N.J.S.A.* 4:1C–31.2]

The resolution of the HCADB stating the "merger of the 30 and 32 [sic] parcels shall be approved by the Franklin Township Planning Board through a formal subdivision or a written indication by the Planning Board that subdivision approval is not

necessary," does not confer on the Planning Board any new or additional powers. No legislation provides such powers to the HCADB. Thus, that instruction should be read to require Franklin Township to do only that which it has the power to do under the MLUA. To read the resolution as though it did confer such powers on a planning board on the basis of that general statement of alternates is to give it a forced and unlawful (ultra vires) reading.

The HCADB and the SADC evaluated and approved the plaintiffs' application under the standards of the Farmland Preservation Act. Franklin Township participated in the hearings conducted by the HCADB and the SADC wherein the issue of agricultural viability was explored and resolved in favor of the applicants. It is beyond the scope of defendant Planning Board to object on the basis of a failure to prove agricultural viability when a county agriculture development board and the SDAC have found to the contrary and they did not appeal these findings.

Plaintiffs have overcome the presumption of validity accorded to local Boards in the decision-making process as set forth in *Kramer v. Bd. of Adjustment of Sea Girt*, 45 *N.J.* 268, 286, 212 *A.*2d 153 (1965); *Ardolino v. Florham Park Bd. of Adjustment*, 24 *N.J.* 94, 105, 130 *A.*2d 847 (1957); and *Kessler v. Bowker*, 174 *N.J.Super.* 478, 486, 417 *A.*2d 34 (App.Div.1979). I conclude the Franklin Township Planning Board's failure to approve plaintiffs' application was beyond the scope of power granted to it and was, thus, arbitrary, capricious and unreasonable. Therefore, plaintiffs' petition is granted, together with the return of the subdivision application funds required by the Planning Board.